*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0005P (6th Cir.)
File Name: 00a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

  *v.*                                    No. 98-3092

ROBERT DICE,
  *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 96-00136—John D. Holschuh, District Judge.

Argued: December 9, 1999

Decided and Filed: January 6, 2000

Before: JONES, COLE, and GILMAN, Circuit Judges.

---

### COUNSEL

**ARGUED:** Louis M. Fischer, DEPARTMENT OF JUSTICE, CRIMINAL DIVISION, APPELLATE SECTION, Washington, D.C., for Appellant. Gordon Hobson, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee. **ON BRIEF:** Louis M. Fischer, DEPARTMENT OF JUSTICE, CRIMINAL DIVISION, APPELLATE SECTION, Washington, D.C., for Appellant.

Gordon Hobson, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee. William A. Hasselbach, RITTGERS & MENGLE, Lebanon, Ohio, for Amicus Curiae.

――――――――――――

## OPINION

――――――――――――

NATHANIEL R. JONES, Circuit Judge. This case arises from a battle in the "war on drugs" that the Government lost because it failed to abide by one of the key rules of engagement. Specifically, the district court found a violation of the Fourth Amendment's knock-and-announce rule and excluded evidence seized in the resulting search. Acknowledging its constitutional infraction, the United States challenges the district court's suppression order on more narrow grounds. For the reasons stated below, we **AFFIRM**.

### I.

### A.

The seriousness of the resulting suppression order prompts us to set forth in considerable detail the facts adduced before the district court.

On October 31, 1996, Defendant-Appellee Dice was indicted in the United States District Court for the Southern District of Ohio on one count of manufacturing and possessing with intent to manufacture and distribute more than 1,000 marijuana plants, in violation of 21 U.S.C. § 841(a)(1); and one count of maintaining a place to manufacture a controlled substance, in violation of 21 U.S.C. § 856(a)(1). On November 25, 1996, Dice moved to suppress evidence that was seized pursuant to a search warrant, and also moved to suppress oral statements he made during the execution of the warrant. On February 19, 1997, the district court held an evidentiary hearing on the motions to suppress, and on June 19, the court granted both motions. After the

information used to obtain the warrant. [O]fficers, in executing a valid search warrant, could break in doors of private homes without sanction.

986 F.2d at 1220.

### C.

Although the Government indirectly calls upon the "inevitable discovery doctrine" in its brief, it does not and can not make such an argument. To prevail under that doctrine, the government must show "that the evidence inevitably would have been obtained from lawful sources in the absence of the illegal discovery." *Leake*, 95 F.3d at 412. This requires the government to proffer clear evidence "of an independent, untainted investigation that inevitably would have uncovered the same evidence" as that discovered through the illegal search. *Id.* Here, the government has not done this. In fact, the record evinces that there was only one investigation into Dice's activity, and that investigation culminated in the illegal entry we are now scrutinizing.

### IV.

The excessive zeal displayed by the enforcement officers cannot be countenanced even in the interest of battling our nation's drug woes. As Lord Atkins declared to his fellow countrymen in World War II, "In England, amidst the clash of arms, the laws are not silent." Nor is our Constitution during our nation's "war on drugs." We therefore **AFFIRM** the district court's suppression order.

unconstitutional, and evidence secured pursuant to that search is inadmissible as direct fruit of the illegal search, justifying the suppression order of the district court in this case.[4]

Finally, we reject the Government's position because it would completely emasculate the knock-and-announce rule. As stated *supra*, the requirement that officers reasonably wait is a crucial element of the knock-and-announce rule. To remove the exclusionary bar from this type of knock-and-announce violation whenever officers possess a valid warrant would in one swift move gut the constitution's regulation of *how* officers execute such warrants. As the *Marts* Court observed, the knock-and-announce rule

> would be meaningless since an officer could obviate illegal entry in every instance simply by looking to the

---

In *United States v. Stefonek*, 179 F.3d 1030 (7th Cir. 1999), the Seventh Circuit found that a warrant was not sufficiently specific to satisfy the Fourth Amendment, but that the exclusionary rule should not apply despite this shortcoming. Thus, *Stefonek* does not speak directly to the situation in this case, but only to the general discretion courts have in whether or not to apply the exclusionary rule following Fourth Amendment violations. Because it concluded that "if the warrant had complied with the Fourth Amendment, the very same evidence would have been seized as was seized," the court held that exclusion was not appropriate. *Id.* at 1035. Once again, we find the Seventh Circuit's decision eschewing the remedy of exclusion in certain cases neither relevant nor persuasive for this case.

[4] Indeed, because the evidence is the direct fruit of an unconstitutional search, there is no need to inquire as to whether the evidence was obtained "through the exploitation of an initial illegality," as the government asks us to do. Gov't Br. at 11. That is an inquiry that is only performed when there is a later, valid search, and a court must determine if evidence from the valid search can be indirectly linked to information garnered in the initial, invalid search. *See generally Murray*, 487 U.S. at 542-44 (remanding to determine if information from an illegal search contributed to the warrant that, when executed, led to the seizure of contraband); *United States v. Markling*, 7 F.3d 1309, 1315 (7th Cir. 1993) (stating that the proper inquiry was whether the illegally obtained evidence "affected the magistrate's decision to issue the search warrant" which led to a valid second search).

court denied the Government's motion for reconsideration, the Government filed a notice for an interlocutory appeal to this Court. On appeal, we are faced with only one question: whether the acknowledged violation of the knock-and-announce rule during the execution of a valid search warrant should result in the suppression of evidence seized in the search following the violation.

### B.

#### 1.

On June 2, 1994, a confidential informant told Pike County Police Chief Deputy John R. Hull ("Hull") that Dice's residence--located at 97 Magaw Road–was using a large amount of electricity. The informant further told Hull that Dice was conducting an indoor marijuana cultivation operation. Hull then subpoenaed the utility records for the residence, ascertaining that Dice's monthly utility bills were up to ten times as high as the average home in the area. Hull next conducted daytime surveillance of the residence, observing covered windows, nine air vents on the roof, and missing and buckling shingles on the roof. He also observed two dogs that appeared to be guarding the house.

On June 8, 1994, Agent Tim Gray of the DEA Task Force of Columbus produced a thermal image videotape of Dice's residence. The tape revealed a comparatively large amount of heat escaping through the roof of the residence. At the suppression hearing, Gray testified that this amount of heat was one factor that might indicate the use of a marijuana "grow light."

Armed with this evidence, Hull applied for a search warrant for the residence on June 8. After conducting a hearing on the warrant application at which he considered the proffered evidence, as well as testimony regarding the use of the thermal imager, the Pike County judge issued the warrant that day. In his motion to suppress, Dice challenged the issuance and execution of the warrant, and the veracity of

information provided to the judge and contained in the warrant.

### 2.

On June 8, the Pike County Sheriff's Office obtained assistance from the emergency response team of the Ross County Sheriff's Office to make the actual entry into Dice's residence. The evidence is conflicting regarding how the officers entered the house. Officer David Large, who was part of the entry team, described the approach and entry at the suppression hearing. As they approached the residence, Large testified, the officers announced that they were deputy sheriffs and that they had a search warrant. Another sergeant then knocked on the door, waited "a few" seconds, and on hearing movement in the house, forced the door open. On cross-examination, Large acknowledged that the entry team had no information indicating that Dice was armed or dangerous, and also had no information that anyone in the home was at risk of harm; he also acknowledged that they had not been refused entry into the home. After knocking down the door, a number of officers entered the residence to execute the search warrant. Inside, they discovered a marijuana cultivation operation, with marijuana plants growing throughout the house. Ultimately, the police seized more than 1,900 marijuana plants, as well as grow lights, other gardening, plumbing and electrical equipment used for indoor cultivation of marijuana, and fertilizer.

Dice testified that he was in the kitchen when the officers arrived outside of his house, and had begun to walk into the living room when they entered. He stated that he heard neither an announcement nor a knock at the door; rather, he simply heard his dogs barking loudly, followed by the officers crashing through the door.

In his motion to suppress, Dice challenged the entry as a clear violation of the knock-and- announce rule under the Fourth Amendment.

In this case, there was but one entry, and it was illegal. The officers seized the evidence in question directly following that illegal entry. Knock-and-announce caselaw in this circuit and others makes very clear that such evidence is inadmissible as the direct fruit of that search. *See, e.g., Bates*, 84 F.3d at 795. This is so even if that entry would have otherwise been legal because it was made pursuant to a valid search warrant. Indeed, the knock-and-announce rule presupposes that the entry is for a valid purpose--it merely prescribes the method by which that entry should be made in order best to protect the interests of the private resident. In other words, a knock-and-announce violation deems a search illegal due to the unlawful method in which it was executed even if the search were legal in its purpose and authority (as demonstrated by a valid warrant). The admissible evidence from cases such as *Segura* and *Moreno* all arose from searches which had both a valid warrant (purpose) as well as a legal entry (method). Here, we only have the former.

Once the distinction between the "two-search cases" and a "one-search case" such as this and *Marts* is clear, there is no caselaw to support the Government's theory that the warrant itself serves as an independent source for evidence seized following a single, illegal search.[3] Rather, the search is flatly

---

[3] The additional cases that the Government recently brought to the Court's attention through a supplemental filing are distinguishable. To the extent that they are analogous to this case, these decisions do not square with the law of this Circuit. Specifically, the Government cited two Seventh Circuit cases that it argues support the proposition that "suppression of evidence is not warranted because of the inevitable discovery doctrine." In *United States v. Jones*, 149 F.3d 715 (7th Cir. 1998), two teams entered defendant's house--one through the front door and one through the back door. The "front-door team" committed a knock-and-announce violation. But Judge Easterbrook, writing for the majority, held that "because by the time the front-door team entered [Jones] was already in the custody of the back-door team," which had apprehended him properly, there had clearly been a search independent of the knock-and-announce violation. *Id.* at 716. Only in dicta did the court cast doubt on whether the exclusionary rule should apply in "marginal" knock-and-announce violations, *id.* at 716-17 (leaving that question "for another day"), a proposition with which we disagree.

court decisions, the Government believes that because the police had a valid search warrant prior to entering the residence, and the evidence would have been discovered had the officers fully complied with the knock-and-announce requirement, the evidence is admissible under the independent source doctrine. This argument simply misunderstands that doctrine.

The cases on which the Government relies are distinguishable from this case because they all involved a *second search* pursuant to a valid warrant, and that second search was independent of the illegal initial search. In *Segura*, for example, the officers initially entered an apartment without a warrant--a clear constitutional violation. The next day, pursuant to a warrant that was based on information wholly independent of their observations while illegally in the apartment, officers seized considerable contraband in their search of the same apartment. *See Segura*, 468 U.S. at 800-01. The Court held this evidence admissible under the independent source rule because there was "an independent source for the warrant under which that evidence was seized." *See id.* at 813-14. Of course, *Segura* did not alter the lower court's conclusion that the items observed in the initial, illegal search were inadmissible. *See* 468 U.S. at 804. *Murray* also involved two entries: an initial illegal search and a later search pursuant to a warrant in which officers seized evidence. *See* 487 U.S. at 535-36. The Court remanded the case for a determination of whether the warrant for the second search resulted from information obtained in the initial illegal entry, or from information independent of that entry. *See id.* at 543-44. Finally, in *United States v. Moreno*, 758 F.2d 425 (9th Cir. 1985), on which the Government relies, a second, legal search took place after an initial illegal search. Because the evidence was obtained only after the latter, lawful entry, that evidence was admissible under the independent source doctrine. *See id.* at 427. *See also Calhoun*, 49 F.3d at 234 (finding that evidence was admissible because it came from a second, valid search made after defendant's consent and not from an initial illegal search).

### 3.

On initially observing the inside of the residence, the officers arrested Dice and read him a *Miranda* warning. Dice responded that he wanted to speak to an attorney, at which point the officers ceased questioning him. Nevertheless, after officers requested that he turn on some exhaust fans to cool down the house (which was hot primarily due to the growing operation), and following a statement by one officer that they were "nice plants," Dice began to talk about the quality of his plants and the methods he used to grow them. Although Hull testified that he warned Dice he was violating his request to remain silent, and that the officers re-read him his *Miranda* rights, another officer brought a tape recorder into the house and taped some of Dice's incriminating statements.

### C.

In the district court, Dice challenged the warrant itself, the execution of the warrant, and the alleged *Miranda* violation. The court rejected Dice's challenge of the warrant,[1] and Dice did not appeal this decision.

Regarding the execution of the warrant, the district court credited the testimony of the officers who stated that they knocked on the door and announced their presence and purpose. Nevertheless, based on the officers' testimony that they only waited a "few" seconds after knocking before violently entering the house, the court found that the officers had not provided a reasonable opportunity for Dice to respond to their knock and announcement. In addition, the court found that the government had not proven any of the

---

[1]Among other arguments, Dice alleged that the statements made in the affidavit presented to the Pike County judge were false; that the warrantless use of the thermal imaging technology was improper; that the data from the thermal inspection was not reliable; and that the judge improperly relied on an unreliable confidential source.

exceptions to the knock-and-announce rule.[2] Focusing primarily on the "destruction of evidence" exception, the court concluded that the extensive evidence within Dice's residence could not have been easily destroyed. Moreover, the mere detection of "movement" inside the house and the presence of barking dogs were not sufficient to provide a basis for a reasonable suspicion that evidence was being destroyed. The court therefore concluded that the search was constitutionally unreasonable. It therefore ordered the suppression of all evidence obtained during the execution of the search warrant, including all the physical evidence seized and Dice's statements.

Finally, the district court held that because an officer initiated the conversation in which Dice described his crimes, Dice had not waived his *Miranda* rights. Dice's statements were thus obtained in violation of the Fifth Amendment. This issue is not on appeal.

Following the suppression order, the Government filed a motion for reconsideration, arguing that despite the knock-and-announce violation, suppression of all the evidence was not the appropriate remedy due to the independent source rule. Finding the evidence to have been a direct result of the violation, the district court rejected this argument and denied the motion.

## II.

This Court reviews *de novo* the district court's legal conclusion regarding the suppression of evidence for a knock-and-announce violation. *See United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996).

---

[2] As discussed *infra*, these circumstances are that 1) the persons inside already know of the officers' authority and purpose; 2) the officers have a justified belief that someone is in imminent peril of bodily harm, or 3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or destruction of evidence. *See United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993).

the independent source doctrine requires an independent, legal search to have taken place. We do not find this effort convincing.

First, we reject the Government's categorization of knock-and-announce violations into different degrees of severity meriting different remedies. *See* Gov't Br. at 19-20 (creating three categories of knock-and-announce violations, and labeling the failure to knock as "the most egregious violation," more severe than failing to wait). A court can not sever the requirement that an officer wait a reasonable time before forcing his way into a residence from the requirement that he knock and announce his presence in the first place. To the contrary, only together do these requirements serve the interests described in *Bates*: 1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; 2) curbing the needless destruction of private property; and 3) protecting the individual's right to privacy in his or her house. *See* 84 F.3d at 794. After all, knocking without properly waiting for admittance contravenes each of these three interests as much as if the knock had never taken place at all. Indeed, this Court has previously emphasized the crucial role played by the *waiting* element in particular: "the identification of themselves as police and *giving the occupants a reasonable time to respond* are far more constitutionally significant" than the requirement that officers state their purpose. *Finch*, 998 F.2d at 354 (emphasis added). Finally, the Government's attempt to downplay the need for officers to wait a reasonable time simply overlooks that the knock-and-announce rule exists to benefit private residents. *See id.* at 353. To those residents, of course, the mere knocking by an officer protects no interests whatsoever if they are not given ample time to respond.

We also wholly reject the Government's reliance on the independent source rule in this context--trying to recast evidence that is in fact the direct fruit of an unconstitutional search as indirect evidence from an independent source. Pointing to cases such as *Murray*, *Segura,* and several circuit

Supreme Court has long provided that when knowledge or possession of evidence is gained from an independent and lawful source, that evidence is admissible. *See Murray*, 487 U.S. at 538. To be admissible, the government must show that the evidence was discovered through sources "wholly independent of any constitutional violation." *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996) (quoting *Nix v. Williams*, 467 U.S. 431, 442-43 (1984)). This doctrine is anchored in the notion that although the government should not profit from its illegal activity, "neither should it be placed in a worse position than it would otherwise have occupied." *United States v. Calhoun*, 49 F.3d 231, 234 (6th Cir. 1995) (quoting *Murray*, 487 U.S. at 482).

This "independent source doctrine" deems evidence admissible in those situations where an illegal search takes place at some point during a criminal investigation, but where a proper, independent search led to the evidence in question. In *Segura*, for instance, the Court held that because a second search pursuant to a warrant was undertaken independent of an initial illegal search, evidence resulting from the latter search was admissible despite the initial illegal entry. *See* 468 U.S. at 813-14. In other words, the Court concluded that the evidence would have been found even if the illegal entry had never taken place: "Had police never entered the apartment . . ., the contraband now challenged would have been discovered and seized precisely as it was here." *Id.* at 814. In *Calhoun*, despite an initial illegal search, evidence acquired as a result of a defendant's consent was admissible because that consent was voluntary and independent of the initial illegality. *See* 49 F.3d at 234. *See also, e.g., United States v. Salas*, 879 F.2d 530, 537-38 (9th Cir. 1989) (admitting evidence obtained pursuant to valid search warrant after initial illegal entry).

### B.

The government's argument here is no more than an attempt to circumvent this clear and binding precedent that knock-and-announce violations require suppression and that

### III.

On appeal, the Government has conceded that the scant amount of time between its knock and entry rendered the entry unreasonable under the Fourth Amendment. Having done so, it nonetheless repeats its position from below that this isolated error amid an otherwise valid search should not lead to suppression of the evidence seized. The Government essentially seeks a rule--derivative of the "independent source doctrine"--that when police officers have a valid warrant, and make a proper knock and announcement, but fail to wait a reasonable time before forcing their way into a residence, the exclusionary rule should not apply to evidence thereafter seized. We can not accept this position because it defies clear precedent in two critical areas of Fourth Amendment law.

### A.

#### 1. The Knock-and-Announce Rule

Absent certain exigent circumstances, it is unreasonable under the Fourth Amendment for an officer to enter a dwelling without first knocking and announcing his presence and authority. *See Wilson v. Arkansas*, 514 U.S. 927, 934 (1995); *Ingram v. City of Columbus*, 185 F.3d 579, 588 (6th Cir. 1999); *Bates*, 84 F.3d at 795. The knock-and-announce rule protects several important interests, including 1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; 2) curbing the needless destruction of private property; and 3) protecting the individual's right to privacy in his or her house. *See Bates*, 84 F.3d at 794. At its heart, the rule exists to protect the occupants of private residences. *See Finch*, 998 F.2d at 353. To protect these interests, evidence procured "ensuing" the execution of a warrant which lacked a proper knock and announcement is inadmissible. *Bates*, 84 F.3d at 795. *See also Miller v. United States*, 357 U.S. 301, 313-14 (1958) (holding that because "the petitioner did not receive [] notice before the officers broke the door to invade his home, the arrest was unlawful and the evidence seized should have been suppressed"); *Sabbath v. United States*, 391 U.S. 585, 586

(1968) (holding that because officers entered without a proper knock and announcement, the subsequent arrest was invalid and the "evidence seized in the subsequent search" was inadmissible); *United States v. Becker*, 23 F.3d 1537, 1541-42 (9th Cir. 1994) (excluding evidence due to a knock-and-announce violation) (cited in *Bates*, 84 F.3d at 795).

This Court has determined that exigent circumstances relieve officers of the knock-and-announce requirement in three situations: when 1) the persons within the residence already know of the officers' authority and purpose; 2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or 3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence. *See Finch*, 998 F.2d at 353. *See also Wilson*, 514 U.S. at 936 (stating that announcement was unnecessary when it would constitute a "senseless ceremony"). The burden of proof rests with the government to show such circumstances. Here, the government concedes that none of these circumstances existed.

An integral part of the knock-and-announce rule is the requirement that officers wait a "reasonable" period of time after a knock before physically forcing their way into a residence. *Finch*, 998 F.2d at 354. This gives the private resident the opportunity to allow them into the residence.

We note that law enforcement officers may not take lightly the requirement of § 3109 that bursting into apartments is permitted only "after notice of [the officers'] authority and purpose [and they are] refused admittance. . . . 18 U.S.C. § 3109. Cases in which officers make a forced entry seconds after announcing their authority and purpose will be carefully scrutinized in the future to determine whether there is compliance with the requirements of § 3109.

*United States v. Nabors*, 901 F.2d 1351, 1354-55 (6th Cir. 1990). Although *Nabors* interpreted 18 U.S.C. § 3109, Supreme Court holdings have made clear that § 3109 codified

the common law knock-and-announce rule, and those same common law principles inform the Fourth Amendment analysis. *See United States v. Ramirez*, 118 S.Ct. 992, 997 (1998); *see also Finch*, 998 F.2d at 354 (stating that "giving the occupants a reasonable time to respond" to a knock and announcement was "constitutionally significant"); *United States v. Marts*, 986 F.2d 1216, 1217-18 (8th Cir. 1993) (stating that defendants must be granted "adequate time to grant admittance to the officers").

### 2. The Independent Source Doctrine

The general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible. The scope of evidence to be excluded sweeps broadly, including both "[e]vidence obtained as a direct result of an unconstitutional search or seizure," as well as evidence that is considered the "'fruit' of a prior illegality" that was "come at by exploitation of [the initial] illegality." *Segura v. United States*, 468 U.S. 796, 804 (1984); *see also New York v. Harris*, 495 U.S. 14, 19 (1990) ("[T]he indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality.")(citation omitted); *Murray v. United States*, 487 U.S. 533, 536-37 (1988) (stating that the exclusionary rule prohibits evidence "that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint") (citation omitted). As stated *supra*, this Court applies the exclusionary rule to knock-and-announce violations. *See Bates*, 84 F.3d at 795; *see also Sabbath*, 391 U.S. at 586; *Miller*, 357 U.S. at 313-14.

At the same time, the Supreme Court has stated that "as 'with any remedial device, the application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.'" *Segura*, 468 U.S. at 804 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Heeding this statement, the