**UNITED STATES OF AMERICA,**
**Plaintiff–Appellant,**

v.

**Dixie MOBLEY, Defendant–Appellee.**

No. 99–6403.

United States Court of Appeals,
Sixth Circuit.

Feb. 7, 2001.

Before MARTIN, Chief Judge; GUY and COLE, Circuit Judges.

PER CURIAM.

The United States appeals the district court's order granting defendant Dixie Mobley's motion to suppress evidence seized from Mobley's house following the failure of police to knock and announce in violation of the Fourth Amendment and 18 U.S.C. § 3109. For the following reasons, we affirm the district court.

I.

On May 25, 1999, immediately following a controlled delivery of a package addressed to Mobley that contained methamphetamine, nine law enforcement officers from the Tennessee Bureau of Investigation and the local police department executed a federal search warrant of Mobley's mobile home in Humboldt, Tennessee. All of the officers wore shirts or jackets labeled "Police" or "T.B.I.", and all wore badges around their necks. The officers pulled into Mobley's driveway, drew their weapons, and ran towards the door of the home yelling "police—search warrant." The main door of the mobile home was open, but the glass storm door was closed. Two officers testified that as they approached the door, they could see Mobley sitting on a couch, that she saw them approaching and made eye contact with them, that she looked surprised, and that the package that had been delivered was on the couch unopened. It is undisputed that the officers did not knock or wait for admittance before entering and searching the mobile home. Mobley was subsequently charged with possessing with intent to distribute more than five hundred grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and using or carrying a firearm in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(C)(1). The district court granted Mobley's motion to suppress, determining that the government had "presented no facts which indicate that the officers saw or heard anything that would justify them in being virtually certain that defendant knew that they were there to execute a warrant."

II.

On a motion to suppress, we review the legal conclusions of the district court de

novo, and the findings of fact for clear error. *See United States v. Bates*, 84 F.3d 790, 794 (6th Cir.1996). We must "review the evidence in the light most likely to support the district court's decision." *United States v. Roark*, 36 F.3d 14, 16 (6th Cir.1994) (quoting *United States v. Williams*, 962 F.2d 1218 (6th Cir.1992)).

■ Law enforcement officers must knock and announce their presence and authority before entering a residence to execute a warrant. *See Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir.1990). One element of the knock and announce rule is that police must wait a "reasonable" period of time before entering a residence to give the residents an opportunity to allow the police into the home. *See United States. v. Dice*, 200 F.3d 978, 983 (6th Cir.2000). This Court has previously emphasized the "crucial role played by the waiting element in particular." *Dice*, 200 F.3d at 984 (citing *United States v. Finch*, 998 F.2d 349, 354 (6th Cir.1993)).

■ This common law knock and announce principle is codified in § 3109. *See Miller*, 357 U.S. at 313, 78 S.Ct. 1190. In relevant part, § 3109 allows an officer to break a door or window to execute a search warrant "if, after notice of his authority and purpose, he is refused admittance." The common law knock and announce principles inform Fourth Amendment analysis, *see United States v. Ramirez*, 523 U.S. 65, 66, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998), and are an element of the reasonableness inquiry under the Fourth Amendment. *See Wilson v. Arkansas*, 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). We analyze the facts and circumstances on a case-by-case basis to determine whether officers have complied with the knock and announce rule, *see Richards v. Wilson*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), and closely scrutinize officers making a forced entry without first adequately announcing their presence and purpose. *See Nabors*, 901 F.2d at 1355.

■ It is undisputed that the law enforcement officers in this case entered Mobley's home without waiting for admittance. The United States concedes that this case involves neither threats to officer safety nor the destruction of evidence. *See, e.g., Nabors*, 901 F.2d at 1354 (finding officers' failure to wait a reasonable period of time justified by threats to officers' safety, threats to the safety of third parties, and the need to preserve evidence). Absent these factors, the officers' immediate entrance into Mobley's home without waiting a reasonable period of time violated the knock and announce rule and the basic rule of the Fourth Amendment.

The dissent suggests that the officers' admitted failure to wait any period of time before entering Mobley's home contravened none of the underlying purposes of the knock and announce rule. Such an interpretation, however, is inconsistent with the law of this Circuit. *See Dice*, 200 F.3d at 984 ("[K]nocking without properly waiting for admittance contravenes each of these three interests [underlying § 3109] as much as if the knock had never taken place at all."). Moreover, the dissent also fails to acknowledge that, while it is true that we have declined in these cases to focus on "what magic words are spoken by the police" in announcing their authority and presence, *see Spikes*, 158 F.3d at 925, we have consistently recognized the importance of an officer's separate duty to wait a reasonable period of time before entry into an occupant's home. *See Dice*, 200 F.3d at 983 ("An integral part of the knock and announce rule is the requirement that officers wait a 'reasonable' period of time

after a knock before physically forcing their way into a residence."); *Finch,* 998 F.2d at 354 (noting that "the identification of themselves as police and giving the occupants a reasonable time to respond are far more constitutionally significant" than the requirement that officers announce their purpose); *Nabors,* 901 F.2d at 1354–55 ("Cases in which officers make a forced entry seconds after announcing their authority and purpose will be carefully scrutinized in the future to determine whether there is compliance with § 3109.").

The evidence seized from Mobley's home was correctly suppressed. Affirmed.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

RALPH B. GUY, Jr., Circuit Judge.

I respectfully dissent. At the conclusion of the evidentiary hearing on the motion to suppress, the district judge concluded:

> The court finds the testimony of the officers that they announced their presence by shouting "police-search warrant" credible and the testimony of Defendant and her witnesses that the officers did not identify themselves incredible. Defendant's testimony that, after she received the package from the mail carrier, she tossed the package aside without opening it or looking to see where the package came from is not believable.

The court went on to find, however, that because it was undisputed that the officers did not knock before entering defendant's trailer, they did not comply with 18 U.S.C. § 3109 and thus the warrant must be suppressed. In reaching this conclusion the court acknowledged exceptions to the requirements of § 3109, but concluded that none of them applied under these facts.

Title 18, United States Code, § 3109 provides:

Breaking doors or windows for entry or exit

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

There is a plethora of cases interpreting and applying this statute, and it is a matter of general agreement that the purposes served by the statute include: (1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) curbing the needless destruction of private property; and (3) protecting the individual's right to privacy. *See United States v. Bates,* 84 F.3d 790, 794 (6th Cir.1996). In discussing this statute, the Supreme Court has stated that the "knock and announce" principle derives from the common law and is a part of the reasonableness inquiry under the Fourth Amendment. In this context, the Court also noted that the Fourth Amendment reasonableness requirement is "flexible" and "should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

In *United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998), *cert. denied,* 525 U.S. 1086, 119 S.Ct. 836, 142 L.Ed.2d 692 (1999), we stated:

> The focus of the "knock and announce" rule "is properly not on what 'magic words' are spoken by the police," or whether the police rang the doorbell, "but rather on how these words and other actions of the police will be perceived by the occupant." *United States v. One Parcel of Real Property,* 873 F.2d 7, 9 (1st Cir.1989).

The courts have recognized at least three situations where officers are relieved from the requirements of the knock and announce rule: "1) the persons within the residence already know of the officers' authority and purpose; 2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or 3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence." *United States v. Dice,* 200 F.3d 978, 983 (6th Cir.2000).

Applying these well-established principles to the facts of this case, I believe that the district court erred in granting the motion to suppress. The court read the "knock" requirement literally and in insolation from the true purpose of the statute. Given the credibility determinations made by the district judge, it is clear the defendant knew of the officers' authority and purpose at the time they entered the house. The defendant had just received a delivery of contraband and, although she was probably surprised at how quickly the police were at her door, she certainly could put two and two together when nine officers began yelling "police-search warrant."

All of the cases relied upon by the defendant involve a forcible entry. The statute in question relied upon by the defendant deals with the circumstances of when an officer "may break open any outer or inner door." Here there was no breaking. Although the Supreme Court has indicated that § 3109 is applicable to the situation when officers open a closed but unlocked door, it was in the context of an *unannounced* intrusion that this pronouncement was made. *See Sabbath v. United States,* 391 U.S. 585, 590, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). Also in so ruling, the Court cited *Keiningham v. United States,* 287 F.2d 126, 130 (D.C.Cir.1960). In *Keiningham,* however, the court specifically stated that its holding was based "on the narrow ground that an announcement, at least, was required." *Id.* In any event, even though the opening of a closed door may be construed as an entry by force, the fact that this was a storm door with full glass allowing two-way visibility and was unlocked is relevant to the "flexible" reasonableness inquiry that informs any Fourth Amendment search issue.

In a similar vein, when the facts of this case are viewed against the backdrop of the three enunciated purposes of the rule, it is apparent that since there was no forcible entry there was no "needless destruction of private property," and the "potential for violence" was really nonexistent because the officers could see the defendant, an elderly lady, sitting on her couch, and she saw and heard the police officers approaching. As for the protection of "the individual's right to privacy," this really is not an issue in this case since the search warrant authorized an entry without permission, and the glass door allowed the officers to see into the house and the defendant to see out without regard to whether the officers knocked. It is hard to see how the defendant's privacy interest would have been furthered had the officers, while staring at the defendant and she staring back, knocked and waited a few seconds.

The case law makes it clear that each one of these search warrant cases needs to be decided on its own particular facts and that general principles of law, although useful, cannot decide cases without consideration of the unique facts in each case. I would reverse and remand.