UNITED STATES of America,
Plaintiff–Appellee,

v.

Terry Eugene HARDIN, Defendant–
Appellant.

No. 03–6093.

United States Court of Appeals,
Sixth Circuit.

Sept. 1, 2004.

Jerry R. Kitchen, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

M. Dianne Smothers, Asst. FP Defender, Office of the Federal Public Defender for the Western District of Tennessee, Memphis, TN, for Defendant–Appellant.

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

The "knock-and-announce" rule requires law enforcement officers to announce their presence and authority before entering a residence to execute a warrant. Terry Hardin, the defendant-appellant, claims that officers violated this rule when they executed a warrant at his residence by failing to afford the occupants a reasonable time to open the door before entering. Because the officers acted reasonably in executing the warrant, and hence did not violate the knock-and-announce rule, we affirm the judgment of the district court.

## BACKGROUND

On September 13, 2002, Sergeant Matthew Hardaway of the City of Jackson Police Department obtained a warrant to search Hardin's residence in Jackson, Ten-

nessee, for marijuana and related materials. In his supporting affidavit, Hardaway stated that a reliable confidential informant had observed marijuana on the premises within the past seventy-two hours and that Hardin had been arrested for violent and narcotics-related crimes in the past. Though this information was not included in the affidavit, the informant had made a controlled buy and had advised Hardaway of "counter-surveillance" and "a possibility of weapons and dogs on the premises."

About seven officers executed the warrant. They drove a van to the front of the residence and parked roughly twenty-five to thirty feet from the front door. The officers, led by Deputy Mark Byrum of the Madison County Sheriff's Department, exited the van and approached the house at "a fast-paced walk." The officers wore body armor, riot gear, and helmets, and police decals were visible on the front and rear of their uniforms. Sherika Long, the fifteen-year-old daughter of Sharon Long, one of the suspects, watched the van pull up in front of the residence from the doorway, and the officers noticed Sherika as they exited the van. According to their testimony, the officers shouted "Police. Search warrant" as they approached the house. Sherika stepped back from the doorway as the officers neared and did not open the external storm door for the officers. Detective Byrum opened the door and entered the house without pausing or knocking. The officers located Hardin and Sharon Long in the master bedroom and found a pistol in the dresser drawer.

A grand jury indicted Hardin on a single count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Hardin moved to suppress the pistol and other evidence obtained from the search of the residence, arguing that (1) the search warrant was invalid for a lack of probable cause, and (2) the officers violated the knock-and-announce rule in executing the warrant.

At the suppression hearing, Byrum testified about the officers' execution of the warrant. According to Byrum, the front door of the residence was open, but the storm door was closed. As the van pulled up in front of the residence, Byrum noticed Sherika Long come to the front door and watch the van park. After Byrum exited the van, he called, "Police. Search warrant" very loudly, "once prior to crossing the threshold, then two to three times upon actually entering the residence." He estimated that it took him "at least four to five seconds" to reach the front door from the van. As Byrum stepped up onto the front porch, Long "backed away from the door. She stepped in and [it] would have been slightly to [her] left about three to four steps and stood there." Byrum "was unsure if she was notifying other people of [their] presence or just simply stepping back to let [them] in or what." "[F]eeling a need to get inside quickly," Byrum opened the storm door without knocking and entered the residence.

Sherika Long also testified about the execution of the warrant. According to Long, she was watching television when she "thought [she] heard some tapping on the door." She opened the front door and the screen door and stuck her head outside, but she did not see anything. She closed the screen door, but she remained at the doorway and, about five minutes later, saw the van pull up in front of the residence. She observed the officers exit the van, and she knew they were police. She heard them yelling "Get down on the ground" as they approached the door, and she backed up "about three or four" feet rather than letting the officers in the door. According to Long, she had dropped to the

ground by the time the officers entered the residence.

In denying Hardin's motion to suppress, the district court held that the officers had not violated the knock-and-announce rule.[1] The court credited Byrum's testimony over Long's testimony and found that the officers had shouted, "Police. Search warrant" prior to entering the residence. The court determined that the officers acted reasonably in entering the residence because, in backing away from the door, Long was either refusing the officers' entry or consenting to the officers' entry and, in either case, the officers were entitled to enter. "It would have been a useless gesture," the court concluded, "for the officer to have knocked on the door and then waited to see what Ms. Long was going to do." The court also found that there were no exigent circumstances to justify entry.

Hardin then pled guilty to the charged crime, reserving his right to appeal the district court's ruling on the suppression motion. Hardin timely appealed.

## ANALYSIS

The district court properly concluded that the officers did not violate the knock-and-announce rule in executing the warrant at Hardin's residence. In reviewing the denial of a motion to suppress, this court applies the de novo standard to the district court's legal conclusions and the clear error standard to the district court's findings of fact. *United States v. Spikes,* 158 F.3d 913, 922 (6th Cir.1998). The court must view the evidence in the light most favorable to the Government. *Id.* "The ultimate question of whether the search or seizure is reasonable under the Fourth Amendment remains subject to *de novo* review." *Id.* at 922–23.

"Absent exigent circumstances, the Fourth Amendment requires the police to knock and announce their presence before forcibly entering a location to execute a search warrant." *United States v. Pelayo–Landero,* 285 F.3d 491, 498 (6th Cir. 2002). "[T]his common law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas,* 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). "The knock-and-announce rule protects several important interests, including 1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; 2) curbing the needless destruction of private property; and 3) protecting the individual's right to privacy in his or her house." *United States v. Dice,* 200 F.3d 978, 982 (6th Cir.2000). "To protect these interests, evidence procured 'ensuing' the execution of a warrant which lacked a proper knock and announcement is inadmissible." *Id.*

"An integral part of the knock-and-announce rule is the requirement that officers wait a 'reasonable' period of time after a knock before physically forcing their way into a residence," so that the resident has the opportunity to allow peaceable entry. *Id.* at 983. This court has declined to adopt a bright-line rule for the amount of time that officers must wait before entry, observing that "[t]he Fourth Amendment's 'knock and announce' principle, given its fact-sensitive nature, cannot be distilled into a constitutional stop-watch where a fraction of a second assumes controlling significance." *Spikes,* 158 F.3d at 926. "Whether police officers paused long enough before admitting themselves into a home thus entails a highly contextual analysis, requiring examination of all the cir-

---

1. The district court also found that there was probable cause for the issuance of the war-

rant. Hardin does not challenge that ruling on appeal.

cumstances of the case." *Id.* (internal quotation marks and brackets omitted). Important factors include the object of the search, possible defensive measures taken by residents of the dwelling, the time of day, and the method of announcement. *United States v. Pinson,* 321 F.3d 558, 566 (6th Cir.2003).

Hardin argues that the officers did not give the occupants of Hardin's residence a reasonable opportunity to open the door. He stresses that Long did not expressly refuse admittance to the officers and that the district court did not find that Long had constructively refused admittance to the officers. Apparently, Hardin believes that, under the knock-and-announce rule, the officers were required to pause at the doorway and wait for Long to clarify whether she was refusing or permitting entrance.

"[T]he Fourth Amendment questions only whether the officers' overall actions were reasonable, not how much time officers must wait to infer a constructive refusal of admittance," *id.* at 568, and the conduct of the officers easily meets this standard of reasonableness. The officers alerted Long and the other occupants of the residence to their identity and purpose by yelling, "Police. Search warrant." Long responded by retreating a few steps, a move indicating that Long was either permitting the officers entry or denying the officers entry. As the district court observed, in either case, the officers were entitled to enter the residence, and therefore "no interest served by the knock and announce rule would be furthered by requiring the officers to stand at the [ ] doorway for [additional time] in order to determine whether the occupant mean[t] to admit him." *United States v. Kemp,* 12 F.3d 1140, 1142 (D.C.Cir.1994); *cf. State v. Richards,* 136 Wash.2d 361, 962 P.2d 118, 125 (Wash.1998).

The possibility of defensive measures and Hardin's background bolster the reasonableness of the officers' action. *Pinson,* 321 F.3d at 566–67; *Spikes,* 158 F.3d at 926. The officers knew that Hardin had been arrested in the past for narcotics and weapons violations and had a lengthy criminal history. Additionally, the confidential informant had advised the officers of counter-surveillance and a possibility of weapons and dogs on the premises. Given these circumstances, the officers acted reasonably in not tarrying on the porch.

Finally, the officers did not offend the policies underlying the knock-and-announce rule when they failed to pause for clarification from Long before entering the residence. First, "when the police and the occupant of a dwelling face each other [ ] and the police announce their purpose before entering, any violence that might ensue between the occupant and the officers is not attributable to surprise and is not likely to be averted by the police standing around [for some period of time]." *Kemp,* 12 F.3d at 1142. Second, the officer did not need to destroy any property in entering the residence. Third, "[w]hile respect for the individual's privacy in [her] home— qualified by the imminent execution of a valid search warrant—is well served by requiring the officer to knock and announce his authority and purpose, such respect would only be mocked by requiring the officer to wait on the doorstep, staring at the occupant, for some length of time." *Id.*

■ Hardin also complains that the officers did not knock before entering the residence. Despite its title, however, the knock-and-announce rule does not require a knock; rather, an announcement of the officer's identity and purpose suffices. *Spikes,* 158 F.3d at 925; *United States v. Smith,* 63 F.3d 956, 962 (10th Cir.1995), *vacated on other grounds by* 516 U.S.

1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). The rule focuses "not on what 'magic words' are spoken by the police, or whether the police rang the doorbell." *Spikes*, 158 F.3d at 925 (internal quotation marks omitted). Rather, it mandates only that the occupant "know who is entering, why he is entering, and be given a reasonable opportunity to surrender his privacy voluntarily." *Id.* (internal quotation marks and punctuation omitted). The announcement made by the officers—"Police. Search warrant"—provided adequate notice to Long and the other occupants of Hardin's residence.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.