**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0016n.06
Filed: October 8, 2004
No. 03-5691

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COURTNEY VANSHION MARTIN, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | EASTERN DIVISION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE and SUTTON, Circuit Judges; and ADAMS, District Judge.[*]

ADAMS, J.

The Defendant, Courtney Vanshion Martin, entered a conditional guilty plea in the United States District Court for the Western District of Tennessee, Eastern Division, for possession of cocaine base with the intent to distribute. On appeal, Martin argues that the trial court erred in denying his suppression motion. For the reasons that follow, this Court affirms the district court's denial of the suppression motion as the purpose of the knock-and-announce rule was satisfied and exigent circumstances existed allowing the police officers to forcibly enter the premises.

I. PROCEDURAL HISTORY

On October 21, 2002, a Federal Grand Jury indicted Martin on one count of possessing

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

cocaine base with the intent to distribute, in violation of Title 21 of the United States Code, section 841(a)(1). Martin filed a suppression motion, which the district court denied after an evidentiary hearing. Martin pleaded guilty to Count 1 of the Indictment on February 28, 2003, reserving his right to appeal the district court's ruling on the motion. On May 22, 2003, Martin was sentenced to 220 months imprisonment, four years supervised release, and a $100 special assessment.

## II. FACTS

Prior to the events in question, Martin was under investigation by the Milan, Tennessee, Police Department for trafficking in illegal drugs. Lieutenant Kenneth Jones was one of the officers conducting the investigation. Lt. Jones was familiar with Martin and knew that he had a prior charge of aggravated assault and a prior conviction for same. Martin was also known for having a very violent temper.

Lt. Jones received information from a confidential source that at least half an ounce of cocaine was located in Martin's residence. He also received information from persons who lived on Martin's street about vehicle traffic and drug dealings at the home. Lt. Jones learned through confidential sources, citizens and other police officers that Martin had made threatening statements toward police officers and some citizens that he "would never go back to the penitentiary" and if the police came to arrest him, for any reason, "he would take officers with him" or "take [them] out." Based on an affidavit, which provided the information received about Martin's drug possession and sales, a warrant was issued to search his residence. The affidavit contained no information regarding the threats made by Martin. Additionally, a "no-knock" entry was not requested.

On June 14, 2002, the Milan Police Department's Special Response Team ("SRT") was sent

to execute the warrant. Sergeant Jason Williams was head of the SRT. The SRT met at the Department, dressed in their gear[2] and were briefed regarding the location of the search and the situation surrounding the warrant. All of the officers in the SRT were familiar with Martin. During the briefing, the officers were told to be careful, that Martin was armed and dangerous, and that he had made the comment that he "wasn't going down again." Sgt. Williams knew that Martin had been involved in a prior shooting at a restaurant in Trenton, Tennessee.

During the early afternoon of June 14, 2002, the SRT went to Martin's residence to execute the warrant. Martin resided in the left side of a duplex. The SRT approached the home from the right. Lt. Jones proceeded past the other officers to his position on the far side of the home. Sgt. Williams was the first officer at the door. Although Martin's front wooden door was open, the screen door remained closed, but unlocked. Sgt. Williams positioned himself in front of the bulletproof shield and looked through the screen door. He noticed Martin and a man, later identified as Jesse Bonds, approximately ten feet from the door. Bonds was cutting Martin's hair.

At this point, the testimony becomes contradictory. Sgt. Williams testified that before entering the residence he knocked loudly on the screen door with the ball of his fist and yelled, "Police department. Search warrant. Open the door." Lt. Jones testified that before he heard the officers enter the residence, he heard Sgt. Williams knock on the door and twice yell, "Police department. Search Warrant." Bonds, who testified for the Defendant, stated that all he heard was someone screaming, "Milan PD. Get down." as the officers burst through the door. The district

---

[2]The SRT officers were dressed in high-intense bulletproof vests, ballistic helmets, and fireproof gloves. The vests contained the insignia "POLICE." The insignia appeared on both the front and back of the vests. The officers also had a full body width bulletproof shield.

court discussed this discrepancy in the testimony and gave credence to Lt. Jones's testimony, finding that before entering the residence the officers knocked and announced at least twice, "Police department. Search warrant."

Because Bonds and Sgt. Williams's testimony also differed regarding the events occurring after the knock-and-announce, the district court stated that it gave credence to the testimony of Sgt. Williams. Sgt. Williams testified that after he banged on the door, announced their presence and purpose, Martin got up from his chair, walked toward the door, stopping approximately three feet from it, made a comment,[3] and threw his arms up in the air. When Martin was standing in front of the door with his arms in the air, he was blocking the officer's view of the residence and Bonds. Sgt. Williams testified that he feared the men inside the residence were setting up an ambush. For the safety of himself and his team, he entered the premises. Sgt. Williams stated that it was between fifteen to twenty seconds from the time he knocked on the door and announced his presence to when he pushed open the screen door and forcibly entered the residence. The district court determined, based on this testimony, that Martin recognized the police and knew why they were there.

Once inside, Sgt. Williams proceeded past Martin, who was ordered to the ground, to Bonds, who was laying on the floor. Once Martin and Bonds were secured, the officers secured the home. Lt. Jones then entered, read the search warrant to Martin and provided him with a copy. The officers then searched the home. In the bedroom dresser drawer, Lt. Jones found a plastic bag containing two very large rocks of cocaine base crack. The rocks weighed approximately forty-five grams.

---

[3]The record does not reflect what was actually said by Martin.

At the conclusion of the suppression hearing, the district court made findings of fact and conclusions of law on the record. The district court cited *United States v. Williams*, 351 F.2d 475 (6th Cir.1965), in which this Court held an officer's entry through an open door, in the presence of the defendant and without invitation or announcement of purpose, did not violate the knock-and-announce rule. *Id.* at 477. The district court then looked to the purpose behind the knock-and-announce rule. It stated that the purpose of the rule is to notify the defendant inside that policemen are at the door and want to come in, thus protecting property and safety.

Based on the testimony and evidence presented, the district court found that no violation of the knock-and-announce rule had occurred because the purpose of the rule had been fulfilled. Martin knew that the police were at his door and that they wanted to come in. The district court further stated that it believed the testimony of Sgt. Williams and Lt. Jones over the testimony of Bonds. The district court made no finding regarding the reasonableness of the officers' actions or the existence of exigent circumstances.

## III. STANDARD OF REVIEW

When considering a district court's ruling on a suppression motion, this Court reviews findings of fact for clear error and conclusions of law *de novo*. *United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1997). All evidence must be viewed "in the light most likely to support the district court's decision." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) (quotation omitted). Additionally, the lower court's factual findings will not be overturned unless the reviewing court has a "definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999). It is further noted that a reviewing court "can

sustain the judgment of a lower court on any ground that finds support in the record." *United States v. Anderson County*, 761 F.2d 1169, 1174-75 (6th Cir. 1985).

The review of state law enforcement activities is governed by the Fourth and Fourteenth Amendments' reasonableness requirement. *Wilson v. Arkansas*, 514 U.S. 927, 930, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Therefore, this Court is called on to determine whether the entry into Martin's residence was reasonable under the circumstances.

The knock-and-announce rule requires that before police execute a search warrant, they must identify themselves, indicate that they are present for the purpose of executing a search warrant, and wait a reasonable period of time before forcibly entering a premises. *United States v. Spikes*, 158 F.3d 913, 925 (6th Cir. 1998). In *United States v. Dice*, 200 F.3d 978 (6th Cir. 2000), this Court stated that the reason for the latter requirement is to provide the person inside "the opportunity to allow [the officers] into the residence." *Id*. at 983. If police do not adhere to the above requirements, their actions will be found to be unreasonable absent certain exigent circumstances. *Id.* at 982.

The knock-and-announce rule serves to protect several important interests. The rule: "1) reduc[es] the potential for violence to both the police officers and the occupants of the house into which entry is sought; 2) curb[s] the needless destruction of private property; and 3) protect[s] the individual's right to privacy in his or her house." *Dice*, 200 F.3d at 982.

The Supreme Court has stated that the reasonableness inquiry is not dictated by bright-line rules but is fact specific, to be determined on a case-by-case basis. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Accordingly, this Court must look to the totality of the

circumstances surrounding the officers' entrance into Martin's home when determining reasonableness. *United States v. Banks*, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003). Additionally, the requirement of reasonableness does not forego consideration of law enforcement interests. *Wilson*, 514 U.S. at 934.

## IV. SUPPRESSION MOTION

Martin has presented only one issue for review: Whether the district court committed error in denying his motion to suppress. Martin argues that his motion should have been granted because the officers did not wait long enough for him to open the door; and there were no exigent circumstances which would have permitted the forcible entry.

Martin claims that the district court's reliance on *Williams* is misplaced. In his brief, Martin implies that the district court made a finding of fact that the door to the residence was open because the court cited *Williams*. However, the district court made no such finding. When ruling on the suppression motion, the district court stated: "And there's the *Williams* case from the Sixth Circuit that basically held that an officer's entry through an open door in the presence of the defendant without invitation or announcement of the purpose did not violate the knock-and-announce requirement."

While it may appear that the district court is making the inference that the door to Martin's residence was open, this Court cannot speculate as to the meaning behind the above statement. Because the district court made no factual finding as to whether the door was open or closed, this Court cannot determine that the district court committed clear error.

The district court expressly based its denial of the suppression motion on the purpose behind

the knock-and-announce rule. The court stated:

> The purpose of the knock-and-announce rule, it seems to me, is to notify the defendant inside that policemen are at the door and want to come in. And you want to knock and announce so that, number one, the defendant will open the door so you don't have to cause property damage to go in; and, secondly, that you don't want to surprise someone who may think you're a burglar who will grab a gun and start shooting at you. So it's to protect property and for safety reasons.

This Court found in *Spikes,* that the focus of the knock-and-announce rule is not on what words are spoken or actions taken by the police, but how the occupant will perceive those words and actions. *Spikes*, 158 F.3d at 925. The proper "trigger point" is "when those inside should have been alerted that the police wanted entry to execute a warrant." *Id.*

The district court found that Martin recognized the police and knew they wanted to execute a warrant. Martin neither argues that this factual finding was clear error, nor argues that the district court's conclusion was incorrect. Accordingly, this Court agrees with the district court that the purpose behind the knock-and-announce rule was satisfied because Martin was aware that the police were outside his door and wanted admittance to execute a search warrant.

Martin next argues that he was not afforded a reasonable period of time to allow the officers' admittance. The Government rebuts Martin's argument, stating that the officers could reasonably infer that Martin was refusing admittance based on his actions as he approached the front door. The district court made no findings as to whether the officers waited a reasonable amount of time before entering the home.

The Court finds the Government's argument is without merit. A review of the testimony presented at the hearing demonstrates that the officers were not claiming that they entered the

residence because they were refused admittance. Sgt. Williams stated that he forcibly entered the residence because he feared for the safety of himself and his team. Additionally, because the officers claimed an exigent circumstance, the question before this Court is not whether the police waited a sufficient amount of time for Martin to reach the door or whether he refused admittance, but whether the claimed exigency justified the forced entry. *Banks*, 124 S.Ct. at 527.

The Supreme Court has held that the knock-and-announce requirement gives way when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *Wilson*, 514 U.S. at 936 (stating "the presumption in favor of announcement would yield under circumstances presenting a threat of physical violence"). "The government bears the burden of proving exigent circumstances existed." *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir. 2000). Additionally, exigent circumstances must be based on more than merely an officer's hunch or suspicion. *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996).

Even if a warrant does not specify a "no-knock" entry, if circumstances present themselves upon the officers' arrival that "support a reasonable suspicion of exigency," the officers may enter the premises without fulfilling the requirements of the knock-and-announce rule. *Banks*, 124 S.Ct. at 525. Therefore, once an exigency occurs, officers are not required to wait any longer before entering the premises. *Id.* at 527 (finding that if officers knock and announce their presence, and then forcibly enter after a reasonable suspicion of exigency ripens, their entry satisfies the Fourth

Amendment, even without refusal of admittance). This Court is required to look to the facts known to the police at the time. *Banks*, 124 S.Ct. at 527; *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

It is not disputed that an exigent circumstance would exist if the officers held a reasonable fear for their safety. However, Martin argues that there could be no reasonable belief that Bonds posed a significant threat to the officers' safety because they had no prior knowledge of Bonds, Bonds was first observed engaged in the activity of cutting hair, and was later lying on the floor. The Government argues that Martin's actions could cause a reasonable officer to conclude that Bonds was taking some type of evasive action, including the possible destruction of the contraband.

The Court will first address the Government's argument. As stated above, it is the Government's burden to prove exigent circumstances existed. *Lewis*, 231 F.3d at 241. The Court finds no evidence in the record that the officers feared that the occupants were possibly destroying the drugs. Therefore, this argument is without merit.

On the record here, what matters is the length of time it would take for Martin and Bonds to have the opportunity to place the officers in danger. After Sgt. Williams knocked on the screen door and announced the officers' presence and purpose, Martin then got up from his chair, walked toward the door, stopping approximately three feet from it, made some undefined comment, and threw his arms up in the air. Sgt. Williams further testified that when Martin was standing in front of the door with his arms in the air, he was blocking the officers' view of the residence and Bonds.

- 10 -

The fact that Bonds was not in a threatening position when the officers first observed him does not forego the possibility that he could have moved into a threatening position once out of their sight.

Although Martin argues that the officers' fear of Bonds was also unfounded because he was lying on the floor, it is unclear when Martin is claiming Bonds lay on the floor. Upon review of the transcript, the Court finds Bonds's testimony was that when the officers entered the residence, he and Martin got down on the floor. Therefore, because this action occurred after the officers entered the residence, it is irrelevant to this inquiry.

Based on Martin's actions of blocking the officers' view of Bonds, Sgt. Williams testified that he feared the men inside the residence were setting up an ambush. For the safety of himself and his team, he entered the premises. Martin claims that such a fear was unfounded because the officers had no prior knowledge of Bonds. What is relevant to this inquiry, however, is what was known to the officers at the time of entry. The fact that the officers had no knowledge of Bonds could cause a heightened fear rather than a reduced one. Additionally, if this Court were to take Martin's argument to its ultimate conclusion, officers would be required to know every person who was in the home and their criminal history, at the time a warrant was to be executed, including visitors such as Bonds, before officers could have a reasonable concern for their safety.

Sgt. Williams knew that a firearm may be in the home because Martin was considered armed and dangerous, knew that Martin had a criminal record which reflected violent tendencies, and knew that Martin had made threats about "not going down again." Martin's actions of stopping just feet from the door and throwing his arms in the air were intentional and not accidental.

Once Martin blocked the officers' view, it would have only taken seconds for an occupant to retrieve a firearm. Therefore, the officers' fear for their safety, once their view of Bonds was blocked, was reasonable under the circumstances and created an exigent circumstance entitling them to immediately enter the residence.

## V. CONCLUSION

Upon a review of the evidence presented, this Court finds that the purpose of the knock-and-announce rule was satisfied because Martin was aware the police were outside of his door and wanted admittance to execute a search warrant. Additionally, it is further determined that exigent circumstances occurred, which allowed the officers to forcibly enter the home without further wait. Therefore, the district court's denial of Martin's suppression motion is AFFIRMED.