*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0106P (6th Cir.)
File Name: 02a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　　*v.*

LUCAS PELAYO-LANDERO,
　　　　*Defendant-Appellant.*

No. 00-6169

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 00-00020—Thomas G. Hull, District Judge.

Submitted: November 27, 2001

Decided and Filed: April 2, 2002

Before: JONES,[*] NELSON, and DAUGHTREY, Circuit
Judges.

---

**COUNSEL**

**ON BRIEF:** Douglas L. Payne, Greeneville, Tennessee, for
Appellant. Guy W. Blackwell, ASSISTANT UNITED
STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

---

[*]This opinion was submitted to the court prior to Judge Nathaniel R.
Jones' departure from the court effective March 31, 2002.

1

————————————

**OPINION**

————————————

NATHANIEL R. JONES, Circuit Judge.  Defendant Lucas Pelayo-Landero ("Landero") was charged in a three count indictment in the United States District Court for the Eastern District of Tennessee, with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), possession of two forged alien registration receipt cards in violation of 18 U.S.C. § 1546(a), and possession of a counterfeit Social Security card in violation of 18 U.S.C. § 1028(a)(6).  Landero entered a conditional guilty plea on all three counts.  On appeal, Landero contests the denial of his motion to suppress evidence seized during the search of his residence pursuant to a search warrant, challenging both the sufficiency of the warrant and the manner of its execution.  For the following reasons, we affirm.

**I.  BACKGROUND**

In 1998, the Tennessee Bureau of Investigation ("TBI") received information that an Hispanic male named "Jessie" was dealing cocaine in east Tennessee.  During an initial undercover phase, TBI Agent Mike Hannon made three purchases of several ounces of cocaine from Jessie.  The three transactions occurred at Jim's Market in Hamblen County, Tennessee and at Harloff Farms in Cocke County, Tennessee.  All were conducted in English.  Thereafter, Jessie offered Agent Hannon a kilogram of cocaine but disappeared before the deal was completed.

In December 1999, a TBI informant reported that Jessie was living with others in a mobile home in Hamblen County and selling cocaine and marijuana. On January 4, 2000, a TBI informant went to the mobile home and purchased a quantity of marijuana from Jessie, who also offered to sell the informant cocaine in the future.  The informant was directed and monitored by the TBI and local law enforcement officials.

Agent Hannon was a member of the surveillance team, who were located in plain view of the mobile home. After the drug purchase, the informant described the inside of the trailer to Agent Hannon and reported that there was at least one firearm present.

On January 6, 2000, Agent Hannon applied for and received a state search warrant from a General Sessions Court judge in Hamblen County. The warrant was supported by a detailed affidavit and sought marijuana, money and other items derived from the sale of controlled substances. The warrant also described the mobile home to be searched by location, markings and characteristics. The search warrant identified the items to be seized as being located:

> . . . in the residence occupied by Jessie (Legal Name Unknown) alias located in Hamblen County, Tennessee and found by the following directions.

> Starting at the intersection of East Morris Boulevard and South Cumberland Street. Travel South on S. Cumberland approximately 2.0 miles to Pinebrook Road. Turn right onto Pinebrook Road and travel West approximately 1.2 miles to Sulphur Springs Road. Turn right onto Sulphur Springs Road and travel north approximately 0.1 miles to Mae Collins Road. Turn right onto Mae Collins Road and travel approximately 0.1 miles to the fourth mobile home on the left. The mobile home is white with pale green trim with a wooden deck on the front. The number 954 is displayed under a window air conditioner on the right end of the mobile home as seen from the street. The actual address of the mobile home park is 1418 Mae Collins Road.

Additionally, a photo of the trailer was attached to the warrant.

On January 11, 2000, the warrant was executed by state and local law enforcement officers. The search team consisted of Agent Hannon, as team leader, and other TBI and Morristown, Tennessee Police Department Officers. The

officers parked a short distance from the mobile home and did not use flashing lights or sirens. The officers were aware that a homicide suspect named "Jose" might be in the mobile home. All of the officers wore clothing that identified them as law enforcement officials. As the officers approached the trailer, they heard several people talking and moving around inside. There was a screen door on the mobile home but the front door was open. The officers could observe through the open door individuals in the living room area of the trailer. The officers knocked on the door and announced in English "Police, search warrant." They waited three to four seconds and then entered the trailer through the unlocked screen door. The officers ordered everyone to get down on the floor. The individuals complied with the officers' instructions. The officers identified Jessie, who is Jesus Zavala-Hernandez ("Hernandez"), also known as "Jesus Zavala-Ontiveros," and Landero, also known as "Lucas Landero-Pelayo." Jose was also present, along with two women and children. All of the male subjects were searched. A loaded Loricin .9 millimeter handgun was found on Hernandez, and a loaded Smith and Wesson .38 caliber revolver was found in Landero's possession. Landero also had two counterfeit alien registration receipt cards (Form I-551) and a counterfeit United States Social Security card, which were seized. A quantity of marijuana was also found in Landero's bedroom and on Hernandez.

The officers seized the marijuana, handguns, and an SKS rifle found in Hernandez's bedroom. The officers arrested Hernandez and Landero on state drug and weapons charges. After the arrests, the police determined that Hernandez and Landero were in the United States illegally and subsequently notified the Immigration and Naturalization Service ("INS"). The men were later interviewed in Spanish by an INS agent and, after waiving their constitutional rights, admitted their alien status and drug and firearms possession.

Landero was charged in a three count indictment in the United States District Court for the Eastern District of Tennessee with possession of a firearm by a prohibited person

were identified and the premises were secured, those persons and the rifle inside the mobile home posed a legitimate threat to the officers' safety. There was also a reasonable likelihood of destruction of evidence. The existence of exigent circumstances justified the time between the knock and announcement and the officers' entrance into the mobile home. Therefore, the district court properly determined that the officers acted reasonably in their entry of the premises.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Landero's motion to suppress.

announcing. The police do not deny this assertion. The police argue, however, that the existing exigent circumstances excused their failure to wait a reasonable amount of time before entering.

In the instant case, the forcible entry was reasonable. All of the officers were dressed as law enforcement officials and had badges displayed on their uniforms. The officers knocked on the door and announced their presence and authority, as well as their purpose to execute the search warrant. Following this announcement, they waited three to four seconds before entering the unlocked screen door. The officers were justified in their actions because they knew that at least one firearm was present in the home, that there were drugs in the home that could have easily been disposed of, and that there might have been a homicide suspect in the home. Accordingly, the entry was reasonable under the circumstances.

Landero also asserts that the officers who participated in the execution of the search warrant violated *Wilson* because the rifle that was seized from the residence was not in a position to endanger the officers. To support his argument, he cites *United States v. Dice*, 200 F.3d 978 (6th Cir. 2000) and argues that it is factually similar to the instant matter. In *Dice*, the court held that the knock and announce requirement was unnecessary only where the residence occupants know the officer's authority and purpose or officers had justified beliefs that their safety, evidence, or the likelihood of escape is in question. *Id.* at 983. Landero's reliance on *Dice* is misplaced, however, because there are significant factual differences between *Dice* and the case now before us. While the officers here were readily identifiable as law enforcement officials, the officers in *Dice* were not in uniform. Likewise, in the present case, the occupants of the mobile home and the officers could see each other but the occupants and officers in *Dice* could not see one another. Thus, the *Dice* rule is inapplicable to this case.

Here, the forcible entry did not violate Landero's Fourth Amendment rights. Until the persons inside the mobile home

in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), possession of two forged alien registration receipt cards in violation of 18 U.S.C. § 1546(a), and possession of a counterfeit Social Security card in violation of 18 U.S.C. § 1028(a)(6).

Landero filed a motion to suppress the evidence seized, which was ultimately denied. He later pleaded guilty as charged in the indictment, but as part of his plea agreement, reserved the right to appeal the denial of his motion to suppress under Fed. R. Crim. P. 11(a). Landero was sentenced to three concurrent eighteen-month terms to be followed by three years of conditional supervised release. On appeal, he argues that the district court's denial of his motion to suppress was erroneous. For the following reasons, we affirm.

## II. DISCUSSION

In reviewing a motion to suppress, we review factual findings for clear error; we review legal determinations *de novo*. *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir. 1992). The district court's factual findings are overturned only if the reviewing court has the "definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999).

The sole issue on appeal is whether the search warrant complied with the Fourth Amendment and adequately described the mobile home to be searched. In the instant case, the defendant contends that the district court erred in denying his motion to suppress seized evidence. Landero puts forth two reasons why the evidence was obtained as a result of an unlawful search and seizure in violation of his Fourth Amendment rights. He first argues that the search warrant was constitutionally defective because it failed to describe the premises to be searched with sufficient particularity. Landero also contends that the officer's entry into his residence during service of the search warrant was a clear violation of the knock and announce rule. His arguments lack merit on both issues.

## A. Sufficient description of premises to be searched

Landero first contends that the warrant was deficient under the Fourth Amendment because neither the warrant nor the supporting affidavit accurately described the place to be searched. The warrant specified that the place to be searched was 1418 Mae Collins Road. Landero argues that the trailer with the number 954 under the window air conditioner was "in all likelihood 1412 Mae Collins Road, Lot #3." In the alternative, he argues that the trailer that was searched was not even on Mae Collins Road. Either way, Landero contends that the warrant failed to adequately described the premises to be searched with sufficient particularity.

In denying the motion to suppress, the district court held that the search was proper because:

All the trailers are within clear view of Mae Collins Road; indeed, the subject trailer is no more than fifty to seventy-five yards from Mae Collins Road. Thus, it was accurate to state that the subject trailer was on Mae Collins Road, since Mae Collins Road was the only public road by which one could travel to the trailer. A reasonable person would conclude that this trailer park was "on" Mae Collins Road.…[T]he trailer was described as a white mobile home with pale green trim, with a wooden deck on the front. The subject trailer matched this description perfectly. Second, the warrant noted that the numbers "954" appeared on the right end of the trailer. Those numbers were present and the description was accurate.… Anyone, given a copy of this description, would have found and identified the subject trailer with ease.… The description in this search warrant throughly satisfies th[e particularity] requirement.… [T]here were other circumstances, apart from the description in the search warrant itself, that completely eliminated the possibility that the wrong trailer would be searched. Specifically, these officers had observed this trailer for days, and had surveilled and electronically monitored a drug transaction that occurred within.

after a knock and announce before physically entering a residence. *United States v. Finch*, 998 F.2d 349, 354 (6th Cir. 1993). What is reasonable depends and may vary based upon the particular circumstances of the situation in question. *Wilson*, 514 U.S. at 933.

This court has long held that the knock and announce requirement is sufficiently complied with when officers immediately enter the premises after knocking and announcing. *United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir. 1990). Forcible entries without announcement of purpose and a refusal of admittance have been approved where: "(1) there would be a danger to the officer; (2) there would be danger of flight or destruction of evidence; (3) a victim or some other person is in peril; or (4) it would be a useless gesture such as when the person within already knew the officer's authority and purpose.)" *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) (citations omitted). In *Nabors*, the agents knocked on the defendant's apartment door, announced their presence and authority, and entered the apartment. 901 F.2d at 1353. The defendant fired two rifle shots at an officer, hitting him once in the right cheek as the defendant fled the second-story apartment by jumping out of a bathroom window. A search of the apartment produced the rifle the defendant fired at the injured officer, a pistol and ammunition, a scale loaded with crack cocaine, and cocaine distribution paraphernalia. The court found that given the facts before the officers, including the threat to their safety, the safety of others, and the need to preserve narcotics evidence, the officers sufficiently complied with the knock and announce requirement. *Id.* at 1355. The court determined that a forced entry moments after the announcement is permissible because of exigent circumstances where the defendant: (1) was suspected of trafficking in drugs which could have easily been disposed of; (2) was known to possess a firearm; (3) wore a bullet proof vest; and (4) was a previously convicted felon. *Id.*

Landero asserts that the police did not wait a reasonable amount of time before entering the trailer after knocking and

accurate, such conjecture is immaterial to the officers identifying the mobile home with reasonable effort.

In the present case, as in *Durk*, additional circumstances indicate that there would not have been a mistaken search of other premises. Agent Hannon was the team leader at the search. He had prepared the affidavit incorporated into the warrant, which specified that Jessie was the occupant of the trailer. He had also previously conducted undercover transactions with Jessie, and had monitored the informant's recent marijuana purchase from Jessie at the location just days before the application for the warrant. It appears that all reasonable steps were taken to ensure that there could not be a mistaken search of other premises here.

The Magistrate evaluated the credibility of the witnesses and the facts at the suppression hearing. The court found that the postal address, if incorrect, and the specification that the trailer was the fourth mobile home on the left were inconsequential parts of the description. Relying on *Durk*, the Magistrate correctly held that the description was sufficiently particular and accurate and that there was virtually no chance that the wrong premises would be searched pursuant to this search warrant. Accordingly, the district court properly adopted the magistrate's conclusion because the warrant included a sufficient description of the premises to be searched.

## B. Knock and Announce

Absent exigent circumstances, the Fourth Amendment requires the police to knock and announce their presence before forcibly entering a location to execute a search warrant. *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995). An officer serving a search warrant at a house must announce the authority under which he is acting and the purpose of his call. 18. U.S.C. § 3109. While the statute does not apply to state agents serving state search warrants, the common law knock and announce rule is guided by the Fourth Amendment reasonableness inquiry. *Wilson*, 514 U.S. at 933. Accordingly, officers must wait a "reasonable period of time"

We agree with the district court that the Fourth Amendment was not violated and the motion to suppress should be denied.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.…[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; *Stanford v. Texas*, 379 U.S. 476, 485-86 (1965). To determine whether such a description is constitutionally valid, a judge must ask "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998). An error in description does not, however, automatically invalidate a search warrant. *See United States v. Prout*, 526 F.2d 380, 387 (5th Cir. 1976); *see also United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975) (stating that the standard for determining sufficient particularity of a description in a search warrant "is one of practical accuracy rather than technical nicety") (citation omitted). The test for determining whether a search warrant describes the premises to be searched with sufficient particularity "is not whether the description is technically accurate in every detail," *Prout*, 526 F.2d at 387-88, but rather whether the description is sufficient "to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir.), *cert. denied*, 492 U.S. 918 (1989) (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)); *see also United States v. Dorrough*, 927 F.2d 498, 500 (10th Cir. 1991) (noting that the "requisite specificity of the description . . . depends heavily on the facts of each case").

The present case is factually similar to the facts before this court in *Durk*. In *Durk*, the defendant was a tenant boarding

in another person's home.  In that case, a search warrant specified that the officers were to search "a single family red brick ranch home located at 4612 Fulton" that was "approximately 3 houses to the east of Grandview." *Durk*, 149 F.3d at 465.  However, upon execution of the warrant, the officers searched the home at 4216 Fulton which was three houses to the *west* of Grandview.  During their search of the defendant's bedroom, the officers seized pipe bombs, bomb making materials, chemicals, a silencer, and a pen gun.

Based upon this evidence, the defendant was indicted for possession of unregistered firearms.  The defendant moved to suppress the evidence seized in the search on the grounds that the warrant did not describe with particularity the place to be searched.  Specifically, the defendant argued the that the house numbers had been transposed from 4216 to 4612 and that the description of the house was "three houses to the east of Grandview" when in fact the house was "three houses to the west of Grandview." *Id.*  The defendant also argued that the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), did not apply because no reasonable officer would believe that the description in the affidavit described 4216 Fulton. *Durk*, 149 F.3d at 466.

The *Durk* court held that the warrant was valid.  Specifically, the court found that the warrant provided a reason for, and a limitation of, the search. *Durk*, 149 F.3d at 466.  The court determined that the warrant did not run afoul of the Fourth Amendment because it sufficiently described the homeowner's residence despite the two inaccuracies. *Id.*  The court further reasoned:

> The warrant correctly identifies the house as a single-family red brick ranch home on the north side of Fulton street.  Although brick, ranch style homes may be common in Shaw's neighborhood, the warrant also describes a more unusual feature: a ten by fifteen foot metal storage shed, the entrance of which is secured by a plastic tie.

*Id.*  Furthermore, the court found that there were additional circumstances available to clarify any inaccuracies in the warrant that could not lead to a mistaken search of other premises. *Id.* (search warrant with wrong address is valid where warrant lacking physical description of particular apartment specifies the name of the occupant of the apartment against which it is directed, the same officer applies for and executes the warrant, and agents executing the warrant personally knew which premises were intended to be searched).  The *Durk* court acknowledged that courts routinely uphold warrants like the one at issue where one part of the description might be inaccurate but the description has other accurate information to identify the place to be searched with particularity.  149 F.3d at 466.  Additionally, the court found that the affidavit incorporated into the search warrant specified that the defendant was a tenant of the homeowner.  The court also noted that the executing officer had just come from the house and he was also the affiant on the warrant.  Based upon these findings, the Court upheld the warrant. *Id.*  Under *Durk*, the particularity requirement eliminates the ability to provide a general description of the premises.  Moreover, the requirement necessitates a reason for the search and places limitations on it. *Id.*

In the present case, Landero does not argue that there is an inaccuracy in the description of the mobile home.  Rather, he suggests its address "is in all likelihood 1412 Mae Collins Road, Lot #3."  However, this descriptive language is not included in the warrant, nor is it necessary.  Here, the particularity requirement is met as the description includes specific directions from an identifiable point to the mobile home park at 1418 Mae Collins Road in Hamblen County, Tennessee.  Once inside the park, the warrant describes the particular trailer by color, by a certain exterior trim, and by a wooden deck.  In addition, the warrant include an unusual feature of the trailer, the number 954 displayed under a window air conditioner on the right end of the trailer.  Moreover, Agent Hannon had attached a photograph of the trailer to the affidavit incorporated into the search warrant.  Thus, even if Landero's speculation on the actual address is