## UNITED STATES of America, Plaintiff–Appellee,

### v.

## Leroy Leopold LEE, Defendant–Appellant.

### No. 01–3317.

United States Court of Appeals, Sixth Circuit.

Oct. 4, 2002.

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District

Before MOORE and COLE, Circuit Judges; and MARBLEY,* District Judge.

### OPINION

MOORE, Circuit Judge.

Defendant–Appellant Leroy Leopold Lee ("Lee") appeals the district court's denial of his motion to suppress. Lee conditionally pleaded guilty to possession with intent to distribute cocaine, being a felon in possession of firearms, and illegal reentry into the United States after deportation. Members of Cleveland's Caribbean Gang Drug Task Force arrested Lee at his residence, following a search of the residence pursuant to a warrant. On appeal, Lee contends that the warrant lacked

of Ohio, sitting by designation.

probable cause. For the reasons stated below, we AFFIRM the order of the district court denying Lee's motion to suppress.

## I. BACKGROUND

In 1999 and 2000, on the basis of information obtained from a confidential informant, members of Cleveland's Caribbean Gang Drug Task Force ("CGDTF") surveilled the residences at 13909–13911 Scioto Avenue in East Cleveland, Ohio for illegal drug activity.[1] The informant told the CGDTF that "Leon," a black male, was selling large amounts of crack cocaine from the residences, and that Leon had a four-door, pale blue BMW. Joint Appendix ("J.A.") at 42 (Search Warrant Aff.). CGDTF members confirmed that such a BMW was often parked in the driveway at 13909–13911 Scioto Avenue, and they further confirmed that it was registered to a "Leon T. Hubbard" ("Hubbard"). J.A. at 42. In addition, a gold/beige pick-up truck with Texas license plates was also often in the driveway, and CGDTF members confirmed that it belonged to a David Baptiste. On September 19, 2000, the informant contacted the CGDTF with information about a specific proposed cocaine transaction between the informant and Hubbard. Based on this specific information, CGDTF members pulled over the BMW at approximately 6:55 p.m. in the parking lot of a supermarket in East Cleveland, and, after seeing cocaine – both powder and crack – on the back seat of the car, they arrested Hubbard and his passenger, Edward Pullmon.

Hubbard agreed to cooperate with the CGDTF, and he told them that he had received the cocaine from a Jamaican man he knew as "Jay," who lived upstairs from him, at 13911 Scioto Avenue, and who drove a gold/beige pick-up truck. The CGDTF then took steps to obtain a warrant, and simultaneously sent an agent to the Scioto Avenue residences. As the agent, Robert A. Fiatal ("Fiatal"), was pulling up to the residences, he noticed the gold/beige pick-up truck pulling out. Fiatal stopped the truck, and detained Lee, who was driving the truck. Lee stated that his name was David Baptiste and that he lived in the upstairs residence – 13911 Scioto Avenue; Fiatal explained that a warrant was being obtained for that address. With Lee, Fiatal and a few other agents went up to 13911 Scioto Avenue, and the agents there performed a protective sweep. A full search of the residence followed the arrival of the search warrant, and the CGDTF seized quantities of cocaine and marijuana, drug paraphernalia, and four semi-automatic firearms with ammunition. The CGDTF also discovered in their search that David Baptiste's real name is Leroy Leopold Lee, and that Lee is a Jamaican citizen who was deported from the United States in 1992 for a 1989 drug-trafficking conviction.

On October 18, 2000, a federal grand jury in the United States District Court for the Northern District of Ohio returned an indictment against Lee, charging him with five counts: (1) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (3) possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); (4) being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1); and (5) illegal reentry into the United States following deportation in violation of 8 U.S.C. § 1326. Lee

---

1. According to the government, "13909–13911 Scioto Avenue is a two and one half story, two family residence sharing a common driveway." Appellee's Br. at 6 n. 2.

initially entered a plea of not guilty; on November 24, 2000, he filed a motion to suppress the evidence obtained in the search of his residence, and on November 29, 2000, he filed a motion to sever Count 5 of the Indictment from the other counts. After a hearing on December 14, 2000, the district court denied both motions.

Following the denial of his motions, Lee entered a conditional guilty plea to Counts 2, 4, and 5 of the Indictment. On March 7, 2001, the district court sentenced Lee to 120 months' imprisonment, eight years of supervised release, and a $ 300 special assessment. Lee timely appeals the denial of his motion to suppress the evidence obtained in the search of his residence.

## II. ANALYSIS

### A. Standard of Review

With regard to a suppression hearing, we review de novo the district court's legal conclusions, and we review for clear error the district court's findings of fact. *See United States v. Pelayo–Landero*, 285 F.3d 491, 494 (6th Cir.2002); *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir.), *cert. denied*, 506 U.S. 892, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992). A factual finding is clearly erroneous only if the reviewing court has "the definite and firm conviction that a mistake has been committed." *Pelayo–Landero*, 285 F.3d at 494–95 (citation omitted). In reviewing the denial of a motion to suppress, we must consider the evidence in the light most favorable to the government. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir.1998) (en banc), *cert. denied*, 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999).

### B. Validity of the Warrant to Search Lee's Apartment

Lee contends on appeal that the district court erred by denying his motion to sup-press the evidence obtained in the search of his residence because the warrant to search his residence was not supported by probable cause. As the district court recognized, a magistrate's findings of probable cause in a warrant "should not be set aside unless arbitrarily exercised." *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir.1993) (quotation omitted). "[A] warrant must be upheld as long as the 'magistrate had a substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see also United States v. Graham*, 275 F.3d 490, 501 (6th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1625, 152 L.Ed.2d 636 (2002). The Supreme Court has explained that probable cause for a warrant is to be determined by a "totality of the circumstances" test: "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

In this case, the search warrant, signed by a state court judge, was for both the upstairs, 13911, and the downstairs, 13909, residences at 13909–13911 Scioto Avenue. However, the supporting affidavit, by Detective Ronald James, Jr. ("James") of the Cleveland Police Department, focused almost entirely on Hubbard and the downstairs residence. The only portion of the affidavit directly pertaining to Lee and the upstairs residence at the Scioto Avenue address stated as follows:

7. (Hubbard) agreed to cooperate. (Hubbard) stated that he had received the cocaine that we seized, from a Jamaican male known to

(Hubbard) as "Jay". (Hubbard) further stated that he "Jay" owned and operated the gold colored F–150 [pick-up truck] that we observed at the residence. (Hubbard) stated that "Jay" bought [sic] him (Hubbard) the cocaine downstairs to him, and that "Jay" lived upstairs at "13911". (Hubbard) stated that "Jay" was frequently in and out of town. (Hubbard) stated that "Jay" was at the residence waiting upon his (Hubbard) return with the money from the cocaine that (Hubbard) had received from "Jay."

J.A. at 44 (Search Warrant Aff.). Lee claims on appeal that this portion of the affidavit could not have provided sufficient support for a finding of probable cause to search Lee's residence because "there was no assertion that drugs would be found at the residence; the identity of the person identified in the affidavit was known only as 'a Jamaican named Jay;' and this information was obtained from an individual who was both the target of the investigation and the subject about whom the first six paragraphs of the affidavit were concerned...." Appellant's Br. at 15.

Although this is a close case, we conclude that the state judge's finding of probable cause to search Lee's apartment was not arbitrarily made. We base this conclusion primarily on our decision in *United States v. Pelham*, 801 F.2d 875 (6th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). In that case, police officers arrested an individual, Brown, for marijuana possession. *Pelham*, 801 F.2d at 876. When asked where he had obtained the marijuana, Brown responded that he had obtained it from the defendant, Pelham, at Pelham's house. Brown also stated that in Pelham's house, he had seen Pelham "storing & selling Marijuana." *Id.* Based on this information, the officer in Pelham prepared an affidavit, in which he named Brown but did not attest to his reliability. A state judge then issued a search warrant for Pelham's residence, entirely relying the officer's affidavit. We upheld the issuance of the warrant, stating that "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *Id.* at 878.[2]

As Lee pointed out in oral argument, the informant in *Pelham* actually witnessed drugs inside the residence for which the search warrant was obtained. *See Pelham*, 801 F.2d at 876. In the instant case, Hubbard told the CGDTF only that "Jay" had brought cocaine from his upstairs residence to Hubbard's downstairs residence. Thus, although substantially similar, the "totality of the circumstances" in this case is different from the "totality of the circumstances" in *Pelham*. We have emphasized, however, that the "totality of the circumstances" test for probable cause in a warrant does not depend on any one factor. *United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir.) (en banc), *cert. denied*, 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000). Hubbard did not actually see drugs in Lee's apartment, but we have stated that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir.1998) (quotation omitted). Furthermore, in this

---

**2.** Pelham has been superseded by this court's decision in *United States v. Allen*, 211 F.3d 970 (6th Cir.) (en banc), *cert. denied*, 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000).

*See Allen*, 211 F.3d at 973 (discussing *Pelham* and two other cases in order to "clarify the law in this circuit"). *Allen*, however, validates Pelham's holding. *See id.*

case, the CGDTF had been generally surveilling 13909–13911 Scioto Avenue for drug activity, they had seen the gold/beige pick-up truck that Hubbard described as belonging to "Jay" in the driveway of the residences, and they knew that the pick-up truck was not registered to Hubbard. Under *Pelham*, we conclude that Hubbard's statement that Lee had brought Hubbard drugs from Lee's apartment that day, combined with Hubbard's willingness to be named on the record and the CGDTF's independent surveillance of the Scioto Avenue residences for drug activity and their witnessing the gold/beige pick-up truck, is just sufficient under the "totality of the circumstances test" to constitute a substantial basis for concluding that a search of Lee's apartment would uncover evidence of wrongdoing.

## C. Good Faith Reliance on the Warrant

Even if there was not probable cause to issue the warrant to search Lee's apartment, we would still conclude that Lee's motion to suppress the evidence obtained in the search was properly denied pursuant to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The *Leon* Court held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. 3405. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. 3405. An officer would not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405 (quotation omitted).

We conclude that James was neither reckless nor dishonest in preparing the affidavit that supported the search warrant for Lee's apartment, and we further conclude that the officers could have reasonably believed that there was sufficient probable cause to search Lee's apartment based on the affidavit. First, although Lee contends on appeal that James knew that his affidavit was false, we find no support in the record for this contention. Second, James's affidavit included the statement of a named witness that the witness had recently received illegal drugs from an individual in Lee's residence. On the basis of that statement, the officers' belief that there was probable cause to search Lee's apartment was not "entirely unreasonable."

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court denying Lee's motion to suppress the evidence obtained in the search of his residence.