File Name: 05a0629n.06

Filed: July 27, 2005

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**


**No. 04-5666**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **Plaintiff-Appellee,** | ) | **COURT FOR THE** |
| | ) | **EASTERN DISTRICT OF** |
| **v.** | ) | **KENTUCKY** |
| | ) | **(No. 5:03-CR-139-1-JBC)** |
| **HAROLD DURHAM,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| | ) | |


BEFORE:    MOORE, COOK, Circuit Judges; and GWIN, District Judge.[*]

Gwin, District Judge:

With this appeal, Defendant-Appellant Harold Durham seeks a reversal of the district court's

denial of his motion to suppress. Durham moved to suppress evidence obtained during a search of

his residence in the City of Irvine, Estill County, Kentucky. The trial commissioner for Lee County,

Kentucky, issued the search warrant for the defendant's residence. The Defendant argues that (1)

the Lee County trial commissioner lacked authority to issue the search warrant for the Estill County

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

-1-

residence and (2) errors in obtaining and executing the warrant require suppression. For the reasons that follow, we **AFFIRM** the decision of the district court denying the Defendant's motion to suppress. We also **VACATE** the Defendant's sentence and **REMAND** the case to the district court for resentencing in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005).

## I. Background

On September 9, 2003, Irvine city police requested a search warrant for the Defendant's residence. Officer Larry Wilson prepared a search warrant affidavit for Captain Chris Cox's signature, along with a proposed warrant identifying Cox as the affiant. When Cox was unavailable to sign, Wilson prepared a second affidavit for Officer Jason Michael Petra. Captain Cox and Officer Petra were both familiar with Defendant Durham's residence from their work for the Irvine Police Department. The affidavit identified Durham's address as 993 Dry Branch Road, although Durham's actual address was 995 Dry Branch Road. The affidavit gave directions to Durham's residence and described the appearance of the residence. The affidavit identified Durham as a "major drug distributor," and listed the property to be seized, including Xanax, marijuana, and items facilitating the sale of drugs.

Although the search warrant would direct the search in Estill County, Wilson prepared the warrant for signature by Margie Shuler, the trial commissioner for Lee County, Kentucky. Lee County and Estill County are both in Kentucky's 23rd judicial district. At the time of the Durham search warrant, the chief judge of the 23rd judicial district was out of the district to attend judicial training. On September 8, 2003, the chief judge had issued an order authorizing Shuler to act on his

behalf from September 8 to September 11, 2003.

Wilson testified that the search warrant he prepared for Shuler identified Petra as the affiant. Wilson transmitted the affidavit and warrant by facsimile to Shuler's home in Lee County. According to Shuler, she received Petra's affidavit and a warrant identifying Petra as the affiant. Shuler signed the documents and returned them to the police by facsimile. Somehow, the first page of the search warrant filed with the Estill County Clerk of Courts incorrectly listed Captain Cox as the affiant.

Irvine police officers, including Petra and Cox, executed the search warrant. The officers recovered approximately 300 pounds of marijuana, 772 Xanax pills, 111 Valium pills, $415,065.00 in United States currency, scales, packaging materials, and various firearms. The Irvine police charged Durham with trafficking over five pounds of marijuana, a class C felony.

On October 3, 2003, a federal grand jury indicted Defendant Durham of the following crimes: engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (Count 1); conspiring to possess with intent to distribute 1,000 or more kilograms of marijuana, in violation of 21 U.S.C. § 846 (Count 2); conspiring to possess with intent to distribute Valium and Xanax, in violation of 21 U.S.C. § 846 (Count 3); possessing with intent to distribute 100 or more kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 4); possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 5); possessing with intent to distribute Valium, in violation of 21 U.S.C. § 841(a)(1) (Count 6); possessing with intent to distribute Xanax, in violation of 21 U.S.C. § 841(a)(1) (Counts 7, 8); and distributing marijuana, in violation of 21 U.S.C. § 841(a)(1) (Counts 9-11). The indictment also included two property forfeiture counts

pursuant to 21 U.S.C. § 853 (Counts 12, 13). Durham pled not guilty at his arraignment.

Durham filed a motion to suppress the evidence recovered from the September 9 search warrant. On January 6, 2004, District Judge Jennifer B. Coffman conducted a hearing and denied Durham's motion to suppress. Judge Coffman ruled that Commissioner Shuler had jurisdiction to issue the warrant for Durham's Estill County residence. Judge Coffman further ruled that Petra's affidavit sufficiently described Durham's property, although it included the wrong street number for the residence. Finally, Judge Coffman held that the clerical error through which the police filed the wrong front page of the warrant with the Estill County Clerk did not invalidate the warrant.

On March 24, 2004, Durham pled guilty to Counts 2, 3, and 11. Durham reserved his right to appeal the trial commissioner's authority to issue the search warrant and the sufficiency of Petra's description of the residence in his affidavit. On May 27, 2004, Judge Coffman sentenced Durham to 44 months imprisonment on Counts 2 and 11, and 36 months imprisonment on Count 3. Judge Coffman ordered that the terms be served concurrently. This appeal followed.

## II. Legal Standard

In reviewing a district court's denial of a motion to suppress, we review the factual findings for clear error and the legal conclusions de novo. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000), *cert. denied*, 531 U.S. 1095 (2001).

## III. Analysis

The Defendant argues that (1) the trial commissioner for Lee County lacked jurisdiction to issue a search warrant for the Defendant's Estill County residence and (2) errors in obtaining the warrant require suppression. The Government responds that Commissioner Shuler had temporary

authority to issue the warrant and that the search warrant was proper. We agree with the Government on both issues.

*A. Authority To Issue Search Warrant*

Kentucky Supreme Court Rule 5.010 empowers the chief judge of a Kentucky judicial district to appoint a trial commissioner to serve as a judicial officer in a county that does not have a regular district judge. The appointment of a trial commissioner is subject to the approval of the Chief Justice of the Kentucky Supreme Court. Ky. SCR 5.010. A trial commissioner has various powers in criminal, civil, juvenile, and probate matters. Among these are the power to issue arrest and search warrants. *Id.* 5.030.

A trial commissioner's authority generally applies only within his county of appointment. *Id.* Rule 5.040 provides an exception: "A trial commissioner may be temporarily assigned by the chief judge of the district to serve in any county within the district and shall, while so serving, have the same authority as in the county of his residence." The Government says Commissioner Shuler's temporary appointment was proper under Rule 5.040.

The Defendant argues that the Kentucky Supreme Court invalidated Rule 5.040 in *Commonwealth v. Shelton*, 766 S.W.2d 628 (Ky. 1989). In *Shelton*, the court affirmed the reversal of the defendant's conviction for cocaine possession. The trial court had denied the defendant's motion to suppress, ruling in part that the Fulton County trial commissioner had properly issued a warrant for a search to be conducted in Hickman County. *Id.* at 629. The appeals court reversed and the Kentucky Supreme Court affirmed.

The Kentucky Supreme Court noted that although a trial commissioner's authority generally

applies only within the county in which he resides, the court's rules permitted temporary assignments elsewhere within a judicial district. *Id.* (citing Ky. SCR 5.040). Still, the court found

> nothing in the record before this Court indicating that [the Fulton County trial commissioner] had been authorized to serve in Hickman County. In any event he has no authority while serving in Fulton County to exercise authority beyond the limits of that county, and under our rules, he could not be given such authority. Therefore, he was without jurisdiction to issue a search warrant in or for Hickman County.

*Id.*

The Defendant reads the cited passage from *Shelton* as overruling Kentucky Supreme Court Rule 5.04. The Defendant focuses on the statement that "[i]n any event, he has no authority while serving in Fulton County to exercise authority beyond the limits of that county, *and under our rules, he could not be given such authority.*" *Id.* (emphasis added).

The Defendant's interpretation extends *Shelton* too far. Unlike the present case, *Shelton* involved a trial commissioner who had not received a temporary appointment extending his authority outside his home county. Moreover, the Kentucky Supreme Court cited Rule 5.04 in reaching its decision, noting that a trial commissioner "may be 'temporarily assigned by the chief judge of the district to serve' elsewhere 'within the district'" under that rule. *Id.* (quoting Ky. SCR 5.040). Taken in context, the court's ruling does not negate Rule 5.04 or impose any additional limitations on the temporary assignment of trial commissioners.

The Defendant cites *Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795 (Ky. 1990), to demonstrate the Kentucky Supreme Court's willingness to invalidate rules of court. *Vessels* does not help the Defendant. There, the court found civil rule 76.25 unconstitutional. In doing so, the

court used clear language: "CR 76.25 is unconstitutional." *Id.* at 798. In *Shelton*, the court offered no such explicit language that it intended to overrule Rule 5.04. Further, Rule 5.04 remains on the books today despite *Shelton*'s holding.

If accepted, the Defendant's position would greatly undermine judicial efficiency. If Kentucky's district judges could no longer appoint trial commissioners to temporarily serve in their stead, judicial activity would grind to a halt whenever a judge leaves the district for an extended period. Police officers would find it difficult to obtain arrest and search warrants; complainants might not obtain emergency protective orders in domestic violence cases; it would be harder for child welfare officials to obtain orders for temporary custody of endangered children. *See* Ky. SCR 5.030 (listing trial commissioners' powers).

For these reasons, we affirm the district court's denial of Durham's motion to suppress for lack of jurisdiction to issue the search warrant.

*B. The Search Warrant*

In his brief, the Defendant contends that "the other inconsistencies and errors in obtaining and executi[ng] the search warrant" require suppression. The Defendant does not specify precisely which supposed "inconsistencies and errors" he challenges. Apparently, the Defendant means to argue that Officer Petra's affidavit did not describe the residence and Commissioner Shuler was not a neutral magistrate as the Fourth Amendment requires. *See United States v. Pinson*, 321 F.3d 558, 562 (6th Cir. 2003). We disagree.

*1. Errors In Affidavit*

In determining whether an affidavit sufficiently describes the location subject to search, we

consider "whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989). We take into account the officer's personal knowledge of the place to be searched. *Id.* at 1497. The description need not be technically accurate in every detail. *United States v. Pelayo-Landero*, 285 F.3d 491, 497 (6th Cir. 2002).

In this case, Officer Petra's affidavit provided a detailed description of Durham's residence, a trailer. It described the location as "Harold Durham's Residence." It provided detailed directions from the Estill County Courthouse to the residence. It described the appearance of the driveway, the large wood front porch, the room built onto the back of the trailer, the color of the trailer, and the vehicles in the driveway. We upheld a similarly detailed description in *Pelayo-Landero*. There, we favorably noted that the description included specific directions to the defendant's mobile home, and that the affidavit described the trailer's color, wooden deck, and air conditioning unit. *Id.*

The Government admits that the affidavit incorrectly listed Durham's address as "993 Dry Branch Rd." instead of "995 Dry Branch Rd." This error does not require suppression. Under similar circumstances, we have held that "additional circumstances make clear that the inaccuracies in the warrant would not lead to a mistaken search of other premises." *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998) (holding that affiant officer's involvement in executing search warrant validated search warrant listing incorrect address). Officer Petra and Captain Cox both had personal knowledge of Durham's residence, and both participated in the search. The police searched the residence they intended to search. In light of these facts, the warrant sufficiently identified

Durham's residence.

2. *Identity Of Affiant*

As part of the "comedy of errors" leading up to the execution of the search warrant, Defendant Durham points to the fact that Commissioner Shuler signed the warrant based on Officer Petra's affidavit, but somehow Captain Cox's affidavit was filed instead of Petra's. The Defendant does not demonstrate that he suffered any prejudice as a result of this administrative misstep.

Both Cox and Petra were familiar with Durham's residence, and both were prepared to sign affidavits describing the residence. Shuler testified that she granted the warrant based on Petra's affidavit. Although Cox's affidavit was filed in error, the error was technical, not constitutional. *See United States v. Hyten*, 5 F.3d 1154, 1156 (8th Cir. 1993) (holding that affidavit listing incorrect name of affiant did not require suppression). The filing error does not require suppression of the seized evidence.

3. *Trial Commissioner's Neutrality*

In his reply brief, Durham also implies that Commissioner Shuler was not a neutral magistrate. Durham cites *Commonwealth v. Brandenburg*, 114 S.W.3d 830 (2003). In that case, the Kentucky Supreme Court affirmed an appeals court decision reversing the trial court's denial of a motion to suppress. Commissioner Shuler had issued a search warrant for the defendant's Lee County residence that led to the seizure of drug paraphernalia. In affirming the appeals court, the Kentucky Supreme Court noted that Shuler's husband worked for the Lee County Commonwealth Attorney's office as a Victim Advocate. *Id.* at 831. In light of her husband's position, the *Brandenburg* court found Shuler was not a neutral magistrate for purposes of the Fourth

Amendment.

In the present case, Shuler signed the search warrant for the Irvine police department, located in Estill County. There is nothing in the record that leads us to question Shuler's impartiality in dealing with officers in Estill County.

*C. Sentencing Issues*

During the pendency of this appeal, the Supreme Court issued its decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Because *Booker* applies to all cases on direct review, *id.* at 769, and the district court appears to have committed plain error in sentencing Durham according to the formerly-mandatory Guidelines, *see United States v. Barnett*, 398 F.3d 516, 530 (6th Cir. 2005), we vacate Durham's sentence and remand the case to the district court for re-sentencing in light of *Booker*.

In May 2004, the district court adopted the sentencing recommendations included in Durham's plea agreement and the Presentence Report and sentenced Durham to 44 months' imprisonment. Durham's sentence reflects a Base Offense Level of 28, because the amount of marijuana involved was between four hundred and seven hundred kilograms; a four-level enhancement because Durham was an organizer, manager, or supervisor of a criminal activity involving at least five people; a two-level decrease in the offense level for acceptance of responsibility; and a one-level decrease in the offense level for a timely notice of intent to plead guilty. R. 164-165 (Plea Agreement ¶ 10). Thus, Durham had a Total Offense Level of 29, which when combined with his criminal history category of I, yielded a sentencing range of 87 to 108 months' imprisonment. The Government moved for a downward departure based on substantial

assistance, and the district court sentenced Durham to a total of 44 months' imprisonment.

As directed, both Durham and the Government filed letter briefs with this Court addressing the impact of *Booker* on Durham's sentence. In his letter brief, Durham concedes that he did not challenge his sentence in the district court below and plain-error review applies. Neither Durham nor the Government contends that a Sixth Amendment error based on judicial fact-finding occurred, but rather that review is appropriate because the district court treated the Guidelines as mandatory. Durham requests that, pursuant to *Barnett*, his case be remanded and that he be re-sentenced in a manner consistent with *Booker*. The Government does not oppose Defendant Durham's request.

Although it appears that Durham stipulated in his plea agreement to all facts necessary to support the sentence imposed, the district court erred in sentencing Durham when she treated the Guidelines as mandatory. R. 159 (May 13, 2004 Ltr. from District Judge Coffman to Louise Holbrook) ("This is to acknowledge receipt of your recent letter concerning the upcoming sentencing of Harold Durham. Pursuant to the Sentencing Reform Act of 1984, I am required to impose the sentence specified by certain guidelines. I will, however, give your view careful consideration in determining what sentence is appropriate within those guidelines."); R. 199 (Sentencing Hr'g Tr. at 8) (noting that district judge had received letters from the public regarding Durham's sentencing but stating that, "I am accepting the factual findings and guideline applications that are in the presentence report. So I am not taking anything in those letters as fact. But I just want you to know it is out there.").

The record does not contain affirmative evidence indicating that the district judge would have imposed the same sentence even if she knew the Guidelines were advisory. R. 199 (Sentencing

Hr'g Tr. at 10) (statement by district judge that "I think [Durham's sentence] is a fair one," but not indicating that Durham's sentence would have been the same if the Guidelines were not mandatory); R. 199 (Sentencing Hr'g Tr. at 12) (basing Durham's sentence on the bottom end of the Guidelines range, explaining that, "You have cooperated with the Government. My standard order applies in this case. And that's half of the bottom end of the guideline range."). Hence, as the Government concedes, the *Barnett* presumption of prejudice cannot be rebutted in this case, and as a result, the district court's plain error in treating the Guidelines as mandatory requires vacation of Durham's sentence and remand for re-sentencing. *See Barnett*, 398 F.3d at 529-30.

IV. Conclusion

For the foregoing reasons, this Court **AFFIRMS** the decision of the district court to deny Defendant Durham's motion to suppress. We also **VACATE** the Defendant's sentence and **REMAND** for resentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005).