NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0012n.06
Filed: January 8, 2009

No. 06-2616

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CLINTON EARL WILSON,

    Defendant-Appellant.

/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    CLAY and GIBBONS, Circuit Judges; and STAMP, District Judge.[*]

**CLAY, Circuit Judge.** Defendant Clinton Earl Wilson ("Wilson") appeals his conviction for possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), and for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On appeal, Wilson challenges the district court's denial of his motion to suppress evidence of narcotics and a gun that police found during a search of his residence pursuant to a warrant. For the following reasons, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

---

[*]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

Wilson resided at 1200 Webb Street ("1200 Webb"), a two-and-a-half story, two-family dwelling in Detroit with two front doors, one leading to a downstairs residence and one leading to an upstairs residence.

On August 9, 2004, Rebecca McKay ("McKay"), a Detroit narcotics officer, was investigating an anonymous tip that six to twelve African American males were selling drugs from the lower window of 1200 Webb. As part of her investigation that day, McKay gave a confidential informant money to purchase drugs at 1200 Webb. Before sending the informant to the residence, McKay made sure the informant did not have any drugs or money on his person and then gave him funds to purchase drugs. McKay watched as the informant met an unidentified African American male (the "seller") on the porch in front of 1200 Webb and gave the seller money. The informant waited on the porch as the seller went into the right front door of the residence and returned with marijuana. The informant gave McKay the marijuana he had purchased and told her that the seller, after taking the money, had gone into the downstairs residence to retrieve the drugs. McKay testified that Wilson was not the seller, but was sitting on the porch "[a] couple of feet" from where the transaction took place. (Joint Appendix ("J.A.") at 271.)

McKay continued investigating 1200 Webb, and on August 11, 2004, observed the seller from the August 9 sale conduct two more transactions on the front porch. Each time, McKay saw the seller take the purchaser's money, go into the residence via the right front door, and return with drugs to sell. McKay also observed the seller carrying out a sale on a street corner approximately thirty yards from 1200 Webb to a buyer in a vehicle.

On August 12, 2004, McKay obtained a search warrant for 1200 Webb. Her supporting affidavit, which was incorporated into the warrant, described the location to be searched:

> Known as the entire premises and curtiledge of 1200 Webb. The above location is described as a brown brick, two and a half story, two family dwelling, with a single common entrance. The area to be searched is the lower portion of the dwelling. The location is located on the north side of the street between Byron and Hamilton. The location is located in the City of Detroit, County of Wayne, State of Michigan.

(J.A. at 50.) McKay's affidavit also recounted the August 9 purchase by the confidential informant and the three drug sales she observed on August 11, and stated that, based on her experience, the volume of drug dealing at 1200 Webb indicated that a firearm would likely be found on the premises as well.

Later that day, a team of Detroit police officers that included McKay raided and searched the lower residence at 1200 Webb. McKay testified that before going to 1200 Webb, she briefed the other officers who were involved in the raid regarding "the location, the surroundings, everything." (J.A. at 272.) As the officers exited their police van, one of them spotted Wilson observing them through the "south window of the house" in the "lower flat," and alerted the other officers, including McKay; McKay testified that she heard the officers "yelling, he's in the window." (J.A. at 80-81, 272.) Upon entering the residence, the officers encountered Wilson and an older male. One officer placed Wilson up against the wall of the dining room, handcuffed him, and detained him there while the search was taking place. McKay, who was responsible for securing 1200 Webb from the back of the premises while the other officers conducted an initial security sweep of the residence, came into the apartment once it had been secured and joined the search. She found narcotics, while another officer found a weapon.

On November 10, 2004, Wilson was indicted on one count of possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On February 7, 2005, Wilson moved to suppress the drugs and the firearm seized during the search of his residence. The district court held an evidentiary hearing on April 18, 2005, and continued the hearing on August 18, 2005. The court also held an *in camera* hearing to examine the confidential informant on April 27, 2005.

At the April 18, 2005 suppression hearing, McKay acknowledged that she erred in her affidavit when she stated that 1200 Webb had "a single, common entrance." (J.A. at 67.) She testified that she did not know why she had made that mistake, and that what she meant was that the location had a "single common address." (J.A. at 67, 74.) Four witnesses for the defense testified during the suppression hearings that on August 9, they had been with Wilson at an all-day party at the yard beside 1200 Webb and never saw him leave to go onto the front porch. At the conclusion of the August 18, 2005 suppression hearing, the court denied Wilson's motion to suppress from the bench.

On May 10, 2006, a jury convicted Wilson of both counts in the indictment. Wilson timely appealed his conviction.

## DISCUSSION

### I.  Standard of Review

In reviewing a district court's suppression determination, this Court reviews findings of fact for clear error and legal conclusions *de novo*. *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir.

4

2005). When a district court denies a motion to suppress, "we consider the evidence in the light most favorable to the government." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc). "In reviewing the denial of the motion, we may consider trial evidence in addition to the evidence admitted at the suppression hearing." *United States v. Hardin*, 539 F.3d 404, 417 (6th Cir. 2008).

## II.    Analysis

Wilson argues that the warrant to search 1200 Webb on August 12, 2004 was defective, because it inaccurately stated that the location had a single common entrance. As a result, he argues, the warrant failed to describe with particularity the location to be searched, violating his Fourth Amendment rights. This Court disagrees.

The Fourth Amendment prohibits the issuance of a search warrant without probable cause, and without "particularly describing the place to be searched, and the persons or things to be searched." U.S. Const. amend. IV. "An error in description does not, however, automatically invalidate a search warrant." *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002). "The test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *Id.* (internal quotations and citations omitted). Accordingly, "[c]ourts routinely have upheld warrants . . . where one part of the description of the

premises to be searched is inaccurate, but the description has other parts which identify the place with particularity." *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998).

In *Durk*, the warrant not only misstated the address of the residence to be searched, but also stated that house was located "3 houses to the east of Grandview," when in fact the house was three houses west of Grandview. *Id.* at 465. The Court nevertheless upheld the warrant because it gave an accurate physical description of the house–including its "unusual" metal storage shed–and because the affiant participated in the search after having just returned from investigating the location. *Id.* Similarly, in *United States v. Gahagan*, 865 F.2d 1490 (6th Cir. 1989), this Court upheld the validity of a warrant to search 7609 Douglas Lake Road, despite the fact that the search ultimately took place at 7577 Douglas Lake Road, a nearby cabin; the cabin belonged to the same family that owned 7609 Douglas Lake Road. In upholding the warrant, this Court relied on the accuracy of the affidavit accompanying the warrant, which described the cabin as part of the premises to be searched. *Id.* at 1497-98. This Court also considered "the relevant information known by the executing officers," who knew that the nearby cabin was the location to be searched. *Id.* at 1498.

In *Knott v. Sullivan*, 418 F.3d 561 (6th Cir. 2005), this Court found a warrant to search a vehicle to be insufficiently particular, despite the searching officer having had prior personal contact with the vehicle. However, in that case, "virtually every descriptor of the vehicle included in the search warrant and accompanying affidavit was incorrect[.]" *Id.* at 569. The affidavit not only misstated the vehicle's identification number and license plate, but the erroneous information in the

warrant accurately described the vehicle of another member of the suspect's family, and therefore could have reasonably led to a search of the wrong vehicle. *Id.*

The circumstances in this case more closely resemble those of *Gahagan* and *Durk*, where the inaccuracy in the warrant was unlikely to lead to an unauthorized or mistaken search. Although the warrant incorrectly stated that 1200 Webb has one common entrance, it stated that the area to be searched was the "lower portion of the dwelling." (J.A. at 50.) The warrant also accurately stated the address of the location, the cross-streets, and the side of the street on which 1200 Webb is located. Moreover, the fact that McKay briefed the officers in advance regarding her personal knowledge of 1200 Webb and then participated in the search further reduced the chance that the wrong location would be searched; from her recent investigation of the residence and information from her informant, she knew that the suspected seller retrieved the drugs for sale from the right front door, and that the right door led to the downstairs residence.

Wilson has not offered any theory as to how there could have been "any reasonable probability" that the officers following the warrant would have mistakenly searched the wrong residence. *See Pelayo-Landero*, 285 F.3d at 496. He contends that this Court must find the warrant insufficiently particular because it only gave the police a "[fifty percent] chance of success in ascertaining and identifying the proper flat." *Appellant's Br.* at 21. This argument ignores the warrant's explicit instruction to search the "lower portion" of the premises. Wilson also argues that McKay's participation should be less of a factor because she was securing the perimeter of the building and therefore did not personally accompany the other officers into the residence. However, even before taking her position, McKay knew that the other officers were properly focused on the

lower residence, because she heard them "yelling" as they were exiting the police van that Wilson was watching them from the lower window. By that point, McKay would have had no reason to believe that the officers were directed at the wrong residence.

Accordingly, the warrant was particular enough to be valid under the Fourth Amendment and to preclude suppression of the evidence found at Wilson's residence.

Wilson has also raised several argument *pro se*. This Court rejects them all, because the record is devoid of any evidence to support Wilson's allegations.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.